**Ruby Lee Nelson DEVEROEX, Individually and as Guardian of the Estate of Edwin H. Nelson, a minor, Appellant,**

v.

**Zan A. NELSON, Appellee.**

**No. 1071.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 11, 1974.

Rehearing Denied Jan. 15, 1975.

George Red, Red & Kemp, William R. Powell, Houston, for appellant.

Thomas B. Foster, Jr., B. Jeff Bratton, Foster, Bratton & Golden, James P. Wallace, Bert E. Derden, Houston, for appellee.

TUNKS, Chief Justice.

Cain H. Nelson, Jr., a resident of Houston, enlisted in the United States Navy. He was assigned to Norfolk, Virginia. In 1950, while so stationed, he met Helen A. Whitehead. Helen had an illegitimate son named Zan, who was then four years old. In 1952 Cain and Helen were married. They and Zan came to Houston to live. A son, Edwin H. Nelson, was born of that marriage in 1959. In 1967, Cain died intestate. Helen was convicted of his murder, for which she served a term in the penitentiary.

An administration for Cain's estate was filed in the Probate Court of Harris County. In that proceeding Zan filed an application for determination of heirship, claiming to have been adopted by Cain by estoppel. The Probate Court sustained that claim, holding that Zan was adopted by

Cain by estoppel. Ruby Lee Nelson Deveroex, the guardian of the estate of Edwin, appealed that matter to the district court.

Three life insurance companies, which had issued policies on Cain's life, filed interpleader in the District Court. They named the persons possibly entitled to the proceeds of the policies, paid the amounts payable to them into court, and were discharged.

First Financial Life Insurance Company had issued a policy in which Helen was named primary beneficiary and Zan, whose relationship on the application was said to be "son," was named contingent beneficiary. The sum of $7,863.38 was paid into court as that amount payable under the policy.

Metropolitan Life Insurance Company had a policy in which the beneficiaries were listed in the order of their preference as first surviving spouse, second child or children, and others of lesser preference. $14,000 was paid into court as the amount due under that policy.

The Prudential Insurance Company had issued two policies. In them, Helen was named primary beneficiary and "Zan Nelson, stepson of the insured and all children born of the marriage of the insured and said wife" were named secondary beneficiaries. $18,769.51 was paid in as the amount due under those policies.

All of the interpleaders were consolidated with the heirship case and such consolidated actions proceeded to trial before a jury. The jury found (1) that Cain agreed to adopt Zan "on or before his marriage to Helen A. Nelson", (2) that as the result of such agreement Helen married Cain, (3) that Zan lived in the relationship of son to Cain by conferring upon Cain the benefits of parenthood, (4) that Helen would not have married Cain but for the agreement to adopt, and (5) that Cain acquired the services and affections of Zan by leading him to believe that he had been adopted. Helen filed a disclaimer as to any proceeds from the insurance policies. The court rendered judgment that Zan is the adopted son of Cain. The court adjudged that Zan recover one-half of the proceeds paid into court as the amount due under each of the life insurance policies and that Edwin's guardian recover the other one-half of such proceeds. The court assessed the court costs, including a fee for an attorney ad litem for the unknown heirs, against the guardian and directed the clerk to deduct such costs from the one-half of the proceeds awarded to her. Both Zan and the guardian excepted to the judgment. The guardian perfected appeal. Zan has asserted cross-points.

By her points of error one and four, appellant argues that there was no evidence to support the submission of an issue to the jury inquiring whether Zan Nelson lived in the relationship of son to the deceased by conferring upon him the benefits of parenthood, nor to support an issue asking whether the deceased led Zan Nelson to believe that he had been adopted, thereby acquiring his services and affections.

At the trial Helen Nelson testified that prior to their marriage, Cain agreed to adopt her son Zan and that she in turn agreed that they would move to his hometown, Houston, after he was discharged from the Navy. She stated that the reason she stayed engaged to Cain Nelson for nearly two years was to be sure that he would love Zan and treat him as his own son. Moreover, she testified that she would not have stayed married to Cain had he not treated Zan as his son. Helen Nelson said that Cain introduced her and Zan to his relatives and friends as his "family," and that Cain and Zan had a normal father-son relationship. Zan always called Cain Nelson "father" or "dad." Zan entered school in Virginia under the name of "Zan Nelson" shortly after Helen and Cain were married and used this name continuously throughout his schooling. Helen further testified that Zan was baptised as Zan Nelson and was inducted into the armed forces as Zan Nelson. Zan Nelson's testi-

mony completely corroborated that of his mother. He stated that he called Cain "Daddy," ". . . that was the only daddy I ever had." He said that he and Cain had a normal father-son relationship, and he described the activities and projects they did together. A number of neighbors and friends testified that Cain Nelson treated Zan as his son, and some of these witnesses knew the family a long time before they learned that Zan was not Cain's natural son.

■ Adoptive parents and their privies are estopped to deny the status of an adopted child where there is evidence of a written or oral contract of adoption entered into between a child's natural parent (or someone in loco parentis) and the adoptive parent followed by a reception of the benefits and affection inuring to the adoptive parent as a result of the parent-child relationship, which benefits and affection were bestowed by the child in reliance upon the adoptive parent's representations that the status of adopted child actually existed. Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 974 (1951); Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 908 (1940); Ramsay v. Lane, 507 S. W.2d 905, 908 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.); Garcia v. Quiroz, 228 S.W.2d 953, 956 (Tex. Civ.App.—San Antonio, writ ref'd n. r. e.). This is an equitable doctrine, and in order for a court to decree that a person is adopted without proof of compliance with the adoption statutes, ". . . proof of the facts essential to invoke the intervention of equity should be clear, unequivocal and convincing." Cavanaugh v. Davis, *supra,* 235 S.W.2d at 978; Calvert v. Johnston, 304 S.W.2d 394, 397 (Tex.Civ.App.—Austin), writ ref'd n. r. e. per curiam, 157 Tex. 590, 305 S.W.2d 778 (1957).

■ In the case at bar, appellee has met this burden of proof because the evidence supports the jury's findings that Cain agreed to adopt Helen's son at or before the time that she married him, that Zan

Nelson lived in a relationship of son to Cain Nelson, conferring affection and the benefits of parenthood upon him, and that Zan Nelson was led to believe that he was Cain Nelson's adopted son. Appellant's points of error one and four are overruled.

■■ Appellant, by her points of error two, three, five, and six, contends that there was insufficient evidence to support the submission of issues inquiring into these fact issues, and that submission of these issues was against the great weight and preponderance of the evidence. However, the only basis upon which this Court can hold that the trial court's submission of issues to the jury was error is that there was no evidence to raise such issues. This is because a point of error based upon the factual sufficiency or weight of the evidence assumes that the evidence was legally adequate to raise the issue. Strauss v. LaMark, 366 S.W.2d 555 (Tex.Sup.1963); Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958). Points of error two, three, five and six are overruled.

Appellant further argues that the trial court erred in applying the doctrine of adoption by estoppel to the facts of this case because the agreement between Cain and Helen Nelson for Cain to adopt Zan was entered into in Virginia, where the doctrine is not recognized; and, therefore, Texas cannot uphold the validity of the agreement since it would not have been held valid in the state where it was made.

In the annotation to 81 A.L.R.2d 1128 (1962), the observation is made that, although secondary authorities tend to maintain the position argued by appellant,

. . . the impact of the cases seems to be that a person claiming adoptive status under a foreign contract to adopt which was invalid in the state of adoption will be accorded the rights of an adopted person in the forum if the contract to adopt is viewed as valid under the law of the forum. *Id.* at 1135.

Although there are no Texas cases directly in point, opinions from other states based on similar fact situations support this generalization. Fisher v. Davidson, 271 Mo. 195, 195 S.W. 1024 (1917); Wooley v. Shell Petroleum Corporation, 39 N. M. 256, 45 P.2d 927 (1935); In Re Lamfrom's Estate, 90 Ariz. 363, 368 P.2d 318 (1962).

■ In the case at bar, there is evidence that the deceased, Cain Nelson, entered into the adoption agreement with his future wife Helen with the intention that they would leave Virginia and return to his home in Texas after his military service and become domiciled there. There is substantial evidence that most of the performance under this oral agreement occurred in Texas. Therefore, we hold that the validity of the agreement to adopt Zan Nelson is governed by the laws of the State of Texas, that the principle of adoption by estoppel is recognized under the case law of this state, and that there is evidence to support the submission of issues on the question whether Zan Nelson was adopted by estoppel. We affirm that portion of the trial court's judgment holding that Zan was effectively adopted by estoppel.

■ Appellant next contends that the trial court erred in entering judgment awarding one-half of the life insurance proceeds to appellee Zan Nelson. Vernon's Tex.Ins.Code Ann. art. 21.23 (1963), provides as follows:

The interest of a beneficiary in a life insurance policy or contract . . . shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, the nearest relative of the insured shall receive said insurance.

Appellant contends that Edwin Cain is the only "relative" of the deceased, Cain Nelson, within the meaning of that provision of the Insurance Code. She relies on Heien v. Crabtree, 369 S.W.2d 28 (Tex. Sup.1963), for the proposition that an unperformed agreement to adopt a child does not create the legal status of parent and child, so that a person held to be adopted by estoppel would not qualify as a relative entitled to receive the proceeds from an insurance policy on the life of the adopting parent. However, in Heien, the persons asserting adoption by estoppel were collateral of the adoptive parents attempting to share in the estate of the alleged adopted child. The Court distinguished the situation there from a case brought to establish the inheritance rights of a child who is claiming adoption by estoppel, and quoted from Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397 (1952);

". . . a legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them . . . ." Heien v. Crabtree, *supra*, 369 S.W.2d at 31.

As to the signficance of adoption by estoppel in Texas, the Court said:

The descriptive phrases, "equitable adoption," "adoption by estoppel," and "adoptive status," are used in decided cases strictly as a shorthand method of saying that because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child.

Vernon's Tex.Rev.Civ.Stat.Ann. art. 46a, § 9 (1969), provides:

When a minor child is adopted in accordance with the provisions of this Article, . . . such child shall thereafter be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though naturally born to them in lawful wedlock.

Of course, Zan was not formally adopted "in accordance with the provisions of this

Article." But, because of the promises, acts and conduct of Cain, he and those claiming under him, including Edwin, were and are estopped to deny such formal adoption. We therefore hold that the trial court properly treated Zan as a child of Cain insofar as that treatment is applicable to the issues of this case.

By her point of error twelve the appellant contends that the trial court erred in assessing costs against her to be paid from the insurance proceeds on deposit in the registry of the court.

■ The appellant took the position in the trial court that Edwin Nelson was entitled to recover all of the money that had been paid into court by the insurance companies. She did not prevail as to that position. The appellee, while not prevailing in the trial court as to all of his contentions, was generally the prevailing party. Under those circumstances the trial court did not abuse its discretion in adjudging costs against appellant. Sivert v. Continental Oil Company, 497 S.W.2d 482 (Tex.Civ. App.—San Antonio 1973, writ ref'd n. r. e.); Texas Rules of Civil Procedure, rules 131 and 141.

■ Included in the costs so assessed by the trial court against the appellant was a fee for an attorney ad litem for the unknown heirs of the decedent, Cain H. Nelson, Jr. Under her point of error, the appellant complains of this action by the trial court. The point of error under which that argument is made simply says, "The trial court erred in assessing court costs against appellant." The assignment of error in defendant's amended motion for new trial, to which that point is germane, is "The Court erred in assessing court costs against this Defendant." The quoted assignment of error and point of error are ineffective to preserve for consideration on appeal appellant's claimed error in the trial court's allowance of a fee for the attorney ad litem. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Tex.R.Civ.P. 324 and 418.

Appellant's point of error with reference to assessment of costs is overruled.

■ It is to be noted that all of the policies involved herein named Helen as primary beneficiary and also named secondary beneficiaries. The First Financial policy named Zan as the only secondary beneficiary. The Prudential policy named Zan and all children born of Cain's marriage to Helen as joint secondary beneficiaries. The Metropolitan policy named Cain's child or children as secondary beneficiaries. The trial court, by decreeing that Zan and Edwin share equally in the proceeds of the policies, apparently considered that section 21.23 of the Insurance Code, as quoted above, precluded recovery by named secondary beneficiaries, as such, where the primary beneficiary was precluded, by killing the insured, from recovering the proceeds. The court's award to Zan and Edwin was apparently on the basis of their being the "nearest relative(s) of the insured." The appellee, by cross-points, argues that such was error and that their participation in the proceeds should be in accordance with the provisions of the policies as to secondary beneficiaries. As the only secondary beneficiary named, Zan would, under this contention, be entitled to all of the proceeds of the First Financial policy; and he and Edwin would share equally the proceeds of the other two policies. We sustain the position of the appellee and his cross-points.

While we have found no Texas authority directly in point on this question, Williams v. Williams, 262 S.W.2d 111 (Tex.Civ.App. —Galveston 1953, no writ), involved an analogous situation. There, the life insurance policy in question provided that its proceeds were payable "to Billie W. Williams, wife of the insured, if she be living, otherwise to Jerry B. Williams, son of the insured, . . . ." Some years after the issuance of the policy, the insured was divorced from Billie W. Williams. She thereby became disqualified to take under the policy because she did not have the re-

**664**

quired insurable interest. When the insured died, his former wife was still living. The administratrix of the insured's estate, his second wife, argued that the son could not take under the policy because the primary beneficiary was still living. The court, nevertheless, held that the son was entitled to the proceeds of the policy.

The question has arisen in other states. While the out-of-state authorities are not uniform in their holdings, it seems that the majority and the better reasoned holdings support the appellee's contentions. *See* 27 A.L.R.3d 835–839 (1969). In 1A J. Appleman, Insurance Law and Practice § 382, at 10 (1965), it is said: "And, if a life insurance policy names both a primary and a secondary beneficiary and the primary beneficiary wilfully kills the insured, the proceeds are payable to the secondary beneficiary, not to the insured's estate."

The language of section 21.23 does not suggest the intention of the legislature to forfeit the right of a guiltless named beneficiary. Zan and Edwin are named beneficiaries who have committed no wrong causing the death of their insured father. Section 21.23 does not affect their rights under the policies. The provision that the proceeds be paid to the nearest relative when a beneficiary is disqualified to take contemplates that no beneficiary named in the policy be qualified. Its purpose is to prevent the proceeds from becoming a part of the insured's estate and thus subject to his debts.

That portion of the trial court's judgment decreeing that Zan A. Nelson and the guardian of Edwin H. Nelson share equally in the proceeds of the policies issued by The Prudential Insurance Company and Metropolitan Life Insurance Company is affirmed. The judgment of the trial court as it relates to the proceeds of the policy issued by First Financial Life Insurance Company is reformed and judgment is here rendered that Zan A. Nelson be awarded all of the proceeds of that policy.

Reformed, and as reformed, affirmed.