Joe Hernandez FLYNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–82–00294–CR.

Court of Appeals of Texas,
El Paso.

Jan. 11, 1984.

Rehearing Denied Feb. 22, 1984.

Second Rehearing Denied March 21, 1984.

Dan Sullivan, Andrews, for appellant.

Michael Holmes, Dist. Atty., Odessa, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at forty years imprisonment. We affirm.

The offense was allegedly committed by the Appellant while he was a juvenile. Ground of Error No. One contends that the trial court should have granted his motion to quash the indictment because the juvenile court failed to appoint a guardian ad litem in the absence of the Appellant's parent or legal guardian. Tex.Fam.Code Ann. sec. 51.11 (Vernon 1975).

Placida Tenorio was served with notice of the certification hearing. She appeared with the Appellant and did testify. The State certification petition alleged that Mrs. Tenorio was the Appellant's mother and the juvenile court order so found. After waiver of juvenile court jurisdiction and indictment, but prior to trial in the district court, Appellant moved to quash the indictment contending that Mrs. Tenorio was not his natural mother.

Mrs. Tenorio was Appellant's aunt, the sister of his natural mother. She took custody of him when he was three days old. The juvenile diagnostic study reflects:

> He is the natural child of Josepha Hernandez. Joe was adopted by Mrs. Tenorio when he was three days old. Mrs. Hernandez was unable to care for Joe when he was born so Mrs. Tenorio, Joe's natural aunt, adopted him.

At that time, Mrs. Tenorio was married to Paul Flynn. Appellant took Flynn's name and was registered as Joe Flynn in public school, albeit with submission of his original birth certificate. For fifteen years, Mrs. Tenorio raised Appellant not *like* a son but *as* her son. He was aware of his true parentage but considered himself the son of Mrs. Tenorio, as did all members of the family. The various diagnostic studies indicate that after her divorce from Flynn and remarriage to Frank Tenorio, Appellant still referred to the former as his father and the latter as his step-father. The family held out an adoptive parent-child relationship to friends and neighbors until the pre-trial hearing. Both Tenorio and the Appellant expressed the mother-son relationship to the investigating police, the juvenile probation department officer Chris Stephen, the juvenile judge, psychologist Richard Smith and Dr. Melvin Goodman, psychiatrist.

The doctrine of equitable adoption or adoption by estoppel is recognized in this jurisdiction, apart from formal adoption proceedings. *Deveroex v. Nelson*, 517 S.W.2d 658 (Tex.Civ.App.—Houston [14th Dist.]), aff'd, 529 S.W.2d 510, 512 (Tex. 1975). The standard of proof on such an issue is by the preponderance of the evidence. *Moran v. Adler*, 570 S.W.2d 883 (Tex.1978). The rules applicable to adoption are to be liberally construed, strict construction and scrutiny to be applied only in the case of a non-consenting natural parent. *Trevino v. Garcia*, 627 S.W.2d 147 (Tex.1982); *Cawley v. Allums*, 518 S.W.2d 790 (Tex.1975). While an agreement to adopt is an essential element of equitable adoption, the agreement need not be proven by direct evidence. It may be inferred from the conduct and admissions of the interested parties. *Young v. Young*, 545 S.W.2d 551 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd); *Mitchell v. Burleson*, 466 S.W.2d 646 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972 (1951).

A prolonged period of custody, use of the custodian's name and equal treatment with the custodian's natural children are not in themselves sufficient facts to infer the requisite adoptive intent and agreement. *Young*, supra; *Lowrey v. Botello*, 473 S.W.2d 239 (Tex.Civ.App.—San Antonio 1971, no writ). In this case, the evidence goes well beyond those three factors. Appellant resided with Mrs. Tenorio from his third day of life until he was fifteen. He was not simply treated equally with her other children, like a son, but was treated as a son by all family members. His adoption of her first husband's name was not simply a concession to the custodial setting since even after her divorce and remarriage, Appellant retained her married name as of the time she assumed custody of him. He neither reverted to the name of his natural mother nor assumed the name of his new "step-father." The entire family, including Appel-

lant, held the relationship out to the world as an adoptive one. While the evidence is conflicting, Chris Stephen testified that Mrs. Tenorio claimed to have adopted Appellant. Such admission was also reflected in the court-ordered diagnostic study. Despite the acknowledged lack of formal adoption proceedings, the evidence was sufficient to establish a parental relationship under the doctrine of adoption by estoppel. Consequently, Tex.Fam.Code Ann. art. 51.-11 was satisfied without the appointment of a guardian ad litem. Ground of Error No. One is overruled.

In Ground of Error No. Two, Appellant contends that the juvenile certification hearing was conducted by an improper judge. Tex.Fam.Code Ann. art. 51.04(f) (Vernon Supp.1975). County Court-at-Law Judge Phillip Godwin recused himself. The Ector County Attorney's office and the initial counsel for Appellant agreed to appoint the Honorable Glenn Pipes as special juvenile judge. Appellant relies upon Article 51.04(f) in asserting that in the absence of the designated juvenile court judge, the proceedings must be had before a magistrate and not simply a licensed attorney. This section applied by its own terms only to the juvenile detention hearing required by Article 54.01. This case involves a transfer hearing in which the juvenile court waived jurisdiction over the Appellant under Article 54.02. Article 51.04(f) is not applicable. Consequently, the provisions of Tex.Rev.Civ.Stat.Ann. art. 1970–346, sec. 15 (Vernon 1964), support the agreed acceptance of Glenn Pipes as special judge of the Ector County Court-at-Law for purposes of this juvenile proceeding. Ground of Error No. Two is overruled.

In Ground of Error No. Three, Appellant contends that the State failed to prove its descriptive averment that the deceased Casimiro Ramirez Trejo was the complainant. In essence, Appellant argues that since dead men tell no tales, Trejo, the murder victim, could not complain. Even without statutory definition, the denomination "complainant" is viewed as a term of art in the criminal law area, referring to the alleged victim of the offense. The State need not prove, in the case of murder, a voiced objection on the part of complainant. Ground of Error No. Three is overruled.

In Ground of Error No. Four, Appellant alleges error in failing to quash the indictment for failure to comply with Tex.Fam.Code Ann. art. 54.02(i) (Vernon 1975). That section provides that if the grand jury fails to indict for the offense charged in the complaint forwarded by the juvenile court, the district court shall certify such failure to the juvenile court. The purpose of this statute is to alert the juvenile court of its need to resume jurisdiction of the case and the minor. Here, the complaint alleged two alternative causes of death, stabbing with a knife and hitting with a stick. The grand jury did not fail to indict upon the offense of murder contained in the complaint. It simply abandoned one of the theories of causation. Thus no return transfer of jurisdiction over any segment of the offense or criminal transaction would have been proper. Ground of Error No. Four is overruled.

In Ground of Error No. Five, Appellant contends that he was denied an effective examining trial. *Ex parte Bittick*, 579 S.W.2d 12 (Tex.Cr.App.1979); Tex.Fam. Code Ann. art. 54.02(h) (Vernon 1975). His complaint is two-fold: he was not advised of his right to make a statement prior to examination of witnesses, Tex.Code Crim. Pro.Ann. art. 16.03 (Vernon 1977), and no commitment order was issued within forty-eight hours of the examining trial, Tex. Code Crim.Pro.Ann. art. 16.17 (Vernon 1977).

The first contention arises under Tex.Code Crim.Pro.Ann. art. 16.03 requiring that the court advise the examining trial defendant that he may make a statement prior to receipt of other testimony, that he may not be compelled to do so but that any statement made may be used against him. The record does not disclose any such warning, no statement was made and none offered subsequently during the

district court trial. While it was error not to advise the Appellant of his right to make a statement, no harm has been shown. Appellant has not proffered by bill or other device any suggestion as to what statement he might have made or its possible effect upon the outcome. Errors as to the improper exclusion of evidence will not justify reversal without an offer of proof supporting such a result. Tex.Code Crim.Pro.Ann. art. 40.09, sec. 6(d)(1) (Vernon Supp.1982).

With regard to the second contention, we note that the court did not fail to render a decision finding probable cause. Such ruling appears in the record of the examining trial conducted April 7, 1982. On April 19, 1982, a second examining trial was conducted with regard to the death of Trejo's companion, Ramon Huerta. The court also found probable cause in that case. On April 29, 1982, the grand jury returned the present indictment. What is lacking in the record is a written commitment based upon the probable cause finding. Tex.Code Crim.Pro.Ann. arts. 16.17 and 16.20 (Vernon 1977). We are not confronted with a failure to afford a juvenile examining trial as in *Ex parte Rodriguez,* 578 S.W.2d 750 (Tex.Cr.App.1979), or indictment following an express finding of no probable cause as in *Ex parte Spencer,* 579 S.W.2d 242 (Tex.Cr.App.1979). Article 16.-17 states that a failure to make or enter an order of commitment within forty-eight hours operates as a finding of no probable cause. As reflected in Judge Onion's commentary to that article, the provision is intended to prevent a magistrate from deferring his ruling until indictment renders the issue moot. That is certainly not the case here. The court expressly found probable cause and bound Appellant over to the grand jury. The constructive finding of "no probable cause" should not prevail under such circumstances. While Appellant had a technical challenge to his continued detention via writ of habeas corpus, we do not feel that the lack of written confirmation of the court's recorded finding of probable cause should vitiate the indictment and subsequent conviction. Ground of Error No. Five is overruled.

In Ground of Error No. Six, Appellant contends that the court erred in denying his motion to exhume the body of Trejo. The autopsy failed to evaluate the multiple stab wounds as to depth, angle, width or shape of the injuries. Appellant now contends that the exhumation may have produced evidence suggesting multiple assailants other than himself. At most the post-exhumation autopsy might have disclosed multiple stabbing instruments, hence multiple assailants. This, however, would have been merely cumulative with the other evidence in the case and consistent with the State's theory of Appellant's guilt as a party. The most favorable view of the post-exhumation evidence would have been merely cumulative and does not meet the standard expressed in *Garcia v. State,* 522 S.W.2d 203, 208 (Tex.Cr.App.1975) for such an action. Ground of Error No. Six is overruled.

The judgment is affirmed.

## OPINION ON MOTION FOR REHEARING

This Court affirmed Appellant's judgment of conviction on January 11, 1984. On rehearing, Appellant in part challenges our application of the doctrine of equitable adoption or adoption by estoppel to find that the presence of Placida Tenorio at his juvenile certification hearing satisfied Tex.Fam.Code Ann. sec. 51.11 (Vernon 1975).

Appellant in no way contests our finding that the prerequisites of such a form of adoption, in terms of the intent or conduct of the parties, were adequately demonstrated. His sole complaint is that:

... there has never been a decision of a Texas court which permitted a finding of equitable adoption or adoption by estoppel in a situation which would not be directly beneficial to the child or someone claiming under the child. The doctrine of estoppel is an equitable device to protect the child and has never been used to

work a liability or detriment to the child or one claiming under the child.

(Motion for Rehearing p. 6).

Appellant's conclusion that our application of the doctrine stands alone in working a detriment upon the child is founded upon a faulty analytical approach. The only way in which this could be construed as a detriment is the net result arising out of the affirmance of the adverse decision of the certification judge. In determining whether the application of the doctrine in this case is consistent with the traditional beneficial purpose of the doctrine, one must take a prospective rather than retrospective view and isolate the analysis from the certification court's decision on the merits of the case. From a pre-hearing viewpoint, application of the doctrine to the relationship between Appellant and Placida Tenorio was not only justified by their past conduct towards each other but was beneficial to the child. The court and prosecuting authority recognized Mrs. Tenorio as the mother of the child. This was a status desired by both Appellant and Mrs. Tenorio and invoked all of the attendant notice and presence rights arising under Family Code chapters 53 and 54. Consequently, before and during the hearing, Appellant had the supportive presence of a caring, nurturing adoptive parent rather than that of a natural mother who was totally unknown to the Appellant or an appointed guardian ad litem whose relationship would have been even less intimate.

Viewed from the standpoint of whether the Family Code requirements were being met as Appellant entered the certification process, we find that the application of the equitable adoption doctrine was beneficial to the Appellant and accurately characterized his relationship to Mrs. Tenorio.

The other issues raised in the Motion for Rehearing are adequately addressed in our original opinion. The Motion for Rehearing is denied.