Martha Sue MAXWELL, Individually and as Representative of the Estate of Fred Maxwell, Jr., Deceased, and as Representative of all Wrongful Death Beneficiaries, Including but not Limited to Hazel Maxwell, Carol Deskins, and Marjorie Baldy; Hazel Maxwell, Individually; Carol Deskins, Individually; and Marjorie Baldy, Individually, Appellants,

v.

Ravi S. MANI, M.D. and Nataranja Bala, M.D., Appellees.

No. C14–93–00989–CV.

Court of Appeals of Texas, Houston (14 Dist.).

Dec. 15, 1994.

Rehearing Overruled March 2, 1995.

Francis I. Spagnoletti, David A. Bickham, Houston, for appellants.

Brian P. Johnson, Judy Bryan, John Roberson, Houston, for appellees.

Before SEARS, DRAUGHN and BARRON, JJ.

## OPINION

BARRON, Justice.

This appeal is from a summary judgment on limitations in a wrongful death and survival action alleging medical malpractice. Appellants bring three points of error. They contend the trial court erred in finding their claims barred under both section 10.01 of article 4590i of the Revised Civil Statutes (the Medical Liability and Insurance Improvement Act) and under section 16.003(b) of the Civil Practices and Remedies Code. Appellants also contend the court erred in awarding appellees their costs. We affirm in part and reverse and remand in part.

In December 1986, Fred Maxwell ("Maxwell") was hospitalized at Pasadena Bayshore Hospital for evaluation of anemia. On December 20, 1986, appellee, Dr. Ravi S. Mani ("Dr. Mani"), performed a history and physi-

cal on Maxwell. A brief follow-up visit occurred the next day. The day after that, Dr. Mani's partner, the other appellee, Dr. Nataranja Bala ("Dr. Bala"), performed a procedure called an esophagogastro-duodenoscopy ("EGD"). A biopsy taken from a nodule in Maxwell's stomach indicated the nodule was benign.

On December 9, 1987, Dr. Bala performed a follow-up EGD and sent tissue to pathology for evaluation. On December 14, 1987, the pathologist's preliminary report was the tumor "most likely represents a carcinoid," that "[m]alignant melanoma cannot be ruled out with certainty," and that additional stains of the tissue were in progress with an addendum report to follow. The diagnosis was listed as: "Tumor cells present consistent with carcinoid." The addendum report issued on December 23, 1987, concluded: "The changes present are consistent with a carcinoid. The diagnosis will remain as previously issued."

On July 26, 1989, Dr. Bala performed a third EGD and found an ulcerated lesion in Maxwell's stomach. Again, biopsies showed a carcinoid tumor, but there were also "atypical cells present suggestive of malignancy", so exploratory surgery was scheduled. Tests prior to surgery revealed metastatic disease in Maxwell's right lung. Another doctor diagnosed the condition as adenocarcinoma. Maxwell was treated for the cancer but died on September 14, 1989. The last day Dr. Bala treated Maxwell was July 31, 1989.

In November 1989 Maxwell's wife, Martha Sue Maxwell ("Martha") met with one of Maxwell's other physicians, Dr. Gill, who advised Martha that her husband's autopsy report showed the tumors had been misdiagnosed and were in fact melanoma. On May 6, 1991, Martha received a copy of the autopsy report.

On September 30, 1991, appellants, Martha, Maxwell's mother (Hazel Maxwell) and his two daughters (Carol Deskins and Marjo-

rie Baldy) filed suit, alleging negligence in failing to diagnose the melanoma and other claims against defendants not parties to this appeal. Appellants had previously, on July 18, 1991, notified appellees of their intent to file suit, as required by the Medical Liability Act.[1] In Plaintiffs' Seventh Amended Original Petition, the complaints against Dr. Bala are primarily that he failed to advise about or respond to the December 1987 biopsy report which indicated that malignant melanoma could not be ruled out with certainty. Appellants complain that Dr. Mani failed to take a proper history of Maxwell in failing to note Maxwell's prior history of melanoma. Dr. Bala testified if he had known of this history, it "would have made a significant turn in this case" and he would have referred Maxwell to an oncologist.

Defendants moved for summary judgment based on limitations. The trial court granted summary judgment in favor of Dr. Mani and Dr. Bala, then ordered a severance. It is from this final summary judgment, that appellants bring this appeal.

## STANDARD OF REVIEW

In reviewing the granting of a motion for summary judgment, this court will take as true all evidence favorable to the non-movants, resolving all doubts and indulging all reasonable inferences in their favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). When defendants in a medical malpractice case move for summary judgment based on the running of limitations, the defendants bear the burden of showing that the suit is barred by limitations as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983).

## SURVIVAL ACTION

Appellants' first point of error asserts that the trial court erred in holding their claims were barred by the limitations provision of section 10.01 of article 4590i.

1. Article 4590i, section 4.01(a) provides:

 Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested to each physician or health care provider against whom such claim is be-

 ing made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

 TEX.REV.CIV.STAT.ANN. art. 4590i, § 4.01(a) (Vernon Supp.1994).

Appellees concede article 4590i contains the applicable limitations provision for appellants' survival claims. Section 10.01 provides, in relevant part, as follows:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1994). The period of limitations as set forth in this statute runs from any one of three events: (1) the date the breach or tort occurred; (2) the date the treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). Additionally, giving notice to the defendant of a claim sixty days before filing suit tolls the statute of limitations up to and including seventy-five days after notice is given. TEX.REV.CIV.STAT.ANN. art. 4590i, § 4.01(c) (Vernon Supp.1994).

█ Appellants characterize their claim against Dr. Bala as one based on a continuing course of treatment, i.e., that Dr. Bala failed to follow-up on the notation concerning malignant melanoma throughout his treatment of Maxwell. In cases where the injury occurs during the course of treatment for a particular condition and the last treatment date is the only readily ascertainable date, then the date of accrual is the date treatment is completed. *Kimball*, 741 S.W.2d at 372 (i.e., accrual is calculated under the second option). These situations generally arise in suits alleging misdiagnosis or mistreatment. *Id.; Marchal v. Webb*, 859 S.W.2d 408, 413 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Because their claims are for a continuing course of treatment, appellants argue limitations should not begin until Dr. Bala's last treatment of Maxwell on July 31, 1989. In addition, because appellees were given notice of claim 60 days prior to suit being filed, the limitations period is tolled for 75 days. TEX.REV.CIV.STAT.ANN. art. 4590i, § 4.01(c) (Vernon Supp.1994). Therefore, appellants contend that after adding 75 days to July 31, 1991, two years from the date of last treatment, their suit was timely filed on September 30, 1991.

Appellees, on the other hand, argue this is a misdiagnosis case and thus falls under the first option for determining when limitations begins: the date of accrual being the date of the tort, here the date of misdiagnosis. According to appellees, the misdiagnosis was based on the biopsy report dated December 14, 1987, which is the date of the tort for purposes of commencing the statute of limitations. In support of their view, appellees cite *Dougherty v. Gifford*, 826 S.W.2d 668 (Tex.App.—Texarkana 1992, no writ). There, a malpractice claim against a pathologist was determined to accrue on the date of the misdiagnosis because the precise date of the misdiagnosis of cancer could be ascertained. *Id.* at 673. When the original biopsy slides were reviewed a second time, it was determined that they showed no indication of cancer, and the patient had undergone unnecessary irradiation and chemotherapy treatments. We find the facts of this case are distinguishable. This suit is not against a pathologist who misread slides. Instead, it concerns claims that the treating physician failed to properly evaluate, follow-up and institute a proper course of treatment based upon the biopsy report.

Appellees also cite *Damron v. Ornish*, 862 S.W.2d 683 (Tex.App.—Dallas 1993, writ denied). In *Damron*, the Dallas court held that when the precise date of the misdiagnosis is ascertainable, that date governs a failure-to-diagnose claim. 862 S.W.2d at 686. Finding a precise date of the tort, the court held that a claim for failure to diagnose periodontal disease was barred. *Id.* at 687. The summary judgment proof established limitations began in June 1986 when the patient had periodontal disease that the orthodontist did not diagnose, even though the patient returned to her orthodontist for a check-up fourteen months later. *Id.* at 686–87. The court found that the patient's wearing a retainer after removal of her braces, without any visits to her orthodontist during the fourteen-month period, was insufficient to show a continuing course of treatment during the

entire period. *Id.* at 686. Thus, we must determine whether the facts of this case establish a continuing course of treatment as defined under the Medical Liability Act and the relevant case law.

■■■ When the complaint is that the defendant instituted an improper course of treatment based upon a misdiagnosis, the statute runs from the date of last treatment. *Rowntree v. Hunsucker,* 833 S.W.2d 103, 105–06 (Tex.1992). According to the statute, the date of last treatment is relevant only if a course of treatment has been established for the condition that is the subject of the claim. *Id.* at 105. In *Rowntree,* the claim was for a failure to diagnose, treat, and monitor occluded arteries while the patient underwent ongoing treatment for high blood pressure. Because there was no summary judgment proof that blockage of the arteries was a discrete condition from high blood pressure, summary judgment was inappropriate to resolve the issue of whether a course of treatment was established. *Id.* at 106. The court also determined that there was no course of treatment based upon the patient's continuing to take prescription medication, which it considered to be "self-treatment." *Id.* at 106–07. Because the claim was not for an improper course of treatment, but for a failure to perform proper examinations to discover the problem, the breach necessarily occurred during the patient's office visits. The court concluded, therefore, that limitations began on the date of the patient's last visit to the doctor. *Id.* at 108.

Even though the supreme court rejected the course of treatment analysis in *Chambers v. Conaway,* cited by both parties, it gave support to the view that limitations accrues from the date of last treatment under facts similar to these. 883 S.W.2d 156 (Tex.1993). In *Chambers,* the supreme court affirmed the court of appeals' judgment, agreeing with its disposition of the case but not its reasoning. 823 S.W.2d 331 (Tex.App.—Texarkana 1991), *aff'd,* 883 S.W.2d 156 (Tex.1993). The court of appeals reversed and remanded a summary judgment, finding a fact question as to when Mrs. Conaway's treatment for a breast condition had ended. 823 S.W.2d at 335. The supreme court rejected the lower courts'

reliance on the second element of section 10.01, course of treatment, and instead relied upon the first element. Dr. Chambers failed to perform follow-up diagnostic tests to discover Mrs. Conaway's breast cancer after mammograms and a sonogram indicated a lump in her breast was not malignant. 883 S.W.2d at 158. Mrs. Conaway filed suit within two years of her last appointment. Mrs. Conaway provided an uncontroverted affidavit from a physician which claimed Dr. Chambers was negligent in his failure to perform follow-up diagnostic tests. Because Dr. Chambers was negligent in his care through the last appointment, the court found Mrs. Conaway's claim was not barred by limitations. *Id.* Similarly, in this case appellants furnished an uncontroverted affidavit from a physician claiming that, based upon the results of the 1987 biopsy report, Dr. Bala should have recommended further evaluation and resection to accomplish a diagnosis to explain the gastrointestinal bleeding. The reasoning in *Conaway* supports the view that Dr. Bala was negligent up to his last treatment of Maxwell, and limitations would commence on July 31, 1989.

■■■ We find the summary judgment evidence, however, establishes Maxwell received a continuing course of treatment from Dr. Bala for the lesion in his stomach. Whether a patient is receiving a course of treatment, and when that treatment ends, depends on the facts of each case. *Rowntree,* 833 S.W.2d at 106. The factors we consider include whether the patient-physician relationship is established with respect to the condition that is the subject of litigation, whether the physician continues to examine the patient, and whether the condition requires further services from the physician. *Id.* Here, the patient-physician relationship was established based on anemia from stomach bleeding. Dr. Bala continued to examine Maxwell and to conduct follow-up EGD tests on the stomach lesion. The condition still required further treatment when cancer was finally discovered. After his death, it was learned that Maxwell had malignant melanoma in his stomach.

Since appellants' claim is based on Dr. Bala's continuous course of treatment for the

stomach nodule, including his failure to properly follow-up on the December 1987 biopsy report, there is no precise or ascertainable date of the tort, such as if the claim was for failure to establish a course of treatment on the date of the biopsy report. Despite the 1987 report's indication that malignant melanoma could not be ruled out with certainty, Dr. Bala recommended no other follow-up examination or testing until a third EGD and biopsy in 1989. Only after this third biopsy did Dr. Bala recommend the surgery which lead to the discovery of cancer in the lung. Maxwell died just two months later.

■ Finally, there is no summary judgment proof establishing that the stomach nodule, for which Dr. Bala initially treated Maxwell, was unrelated to the cancer. *See Rowntree*, 833 S.W.2d at 106. Thus, there is no proof negating that Maxwell was undergoing a course of treatment for the condition that is the subject of the claim. It was appellees' burden as movants to establish when the cause of action accrued. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). We must indulge all reasonable inferences and resolve any doubts in favor of the nonmovants. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 302 (Tex.1990). For summary judgment purposes, we cannot say the evidence established the two conditions—the stomach nodule and the melanoma—are unrelated. *See Rowntree*, 833 S.W.2d at 106. Therefore, we conclude that Dr. Bala failed to negate a continuing course of treatment.

Because the survival claim against Dr. Bala is not based on a tort occurring at a precise or ascertainable point, but is instead based on a course of continuing treatment, article 4590i provides that limitations began on July 31, 1989, the date Dr. Bala last treated Maxwell. Since suit was filed on September 30, 1991, within two years and seventy-five days after Dr. Bala's last treatment, we hold that the survival claim was timely. We sustain point of error one as to the survival claim against Dr. Bala only.

■ Appellants concede that Dr. Mani's sole contact with Maxwell was in December 1986. Any breach or tort (i.e., the failure to take a complete medical history) had to occur then. Therefore, the two-year limitations period ended in December 1988, and the survival claims against Dr. Mani, filed September 30, 1991, are barred as a matter of law. As to the survival claim against Dr. Mani, point of error number one is overruled.

## DISCOVERY RULE AND OPEN COURTS

■ Had we held that the survival action accrued on an ascertainable date of a discrete tort (i.e., the date of the biopsy report in December of 1987) then limitations would have run in December 1989. Appellants raised the argument that a two-year limitations period from the date of the tort would violate the open courts provision of the Texas Constitution because they did not and should not have discovered the negligence until they saw the biopsy report in May of 1991, long after limitations had expired. The open courts exception is used to defeat the strict application of the two-year statute of limitations in the Medical Liability Act, based on the principle that the legislature cannot abridge a citizen's access to the courts. *See Morrison v. Chan*, 699 S.W.2d 205, 207 (Tex. 1985) (legislature cannot create a remedy contingent upon an impossible condition). The open courts provision provides: "All courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. In those cases where it is inherently impossible for an injured plaintiff to discover her injury within two years, the constitution requires that a party be given a reasonable opportunity to discover her injury and bring suit. *See id.* at 207–08; *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985).

Appellees' counter-argument to this discovery rule plea was that the summary judgment evidence established that appellants knew or should have known of the alleged negligence in November of 1989 (i.e., when Dr. Gill advised Martha of the autopsy results), prior to the expiration of limitations in December of 1989. The trial judge agreed with this reasoning for granting summary judgment, as reflected in a letter that is part

of the record on appeal.[2]

 However, the open courts and discovery rule claims are not needed to extend limitations on the survival claims against Dr. Bala since the cause of action accrued from the last day of treatment (July 31, 1989), and by the time limitations expired (July 31, 1991), appellants had discovered the negligence (May 1991). As to the claim against Dr. Mani, however, where limitations expired in December 1988, the open courts provision does not shield appellants because the open courts provision offers no protection to purely statutory causes of action. For the open courts protection to apply, the limitations statute must restrict a *common law* cause of action. *Moreno,* 787 S.W.2d at 355–56. Like all actions based upon theories of negligence, the malpractice claim here *was* a common law claim. It would have died with Fred Maxwell, however, had it not been preserved by the legislature in the wrongful death and survival statutes. *See* TEX.CIV. PRAC. & REM.CODE ANN. §§ 71.002 & 71.021 (Vernon 1986).

 There is no common law cause of action for wrongful death. *Moreno,* 787 S.W.2d at 356. Likewise, at common law, an individual's action for personal injuries did not survive his death. *Russell,* 841 S.W.2d at 344. Wrongful death and survival actions are purely statutory. For this reason, appellants' authorities applying the open courts exception that do not allege statutory claims are inapplicable here. *See, e.g., Hellman v. Mateo,* 772 S.W.2d 64 (Tex.1989); *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984). We conclude the open courts provision does not apply to appellants' wrongful death or survival claims. *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 845 (Tex.1990); *Suber v. Ohio Medical Products, Inc.,* 811 S.W.2d 646, 650 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (en banc).

 In connection with their discovery allegations, appellants also allege fraudulent concealment tolled the running of the applicable limitations period. This claim is made for the first time on appeal. Having failed to raise fraudulent concealment in response to the motion for summary judgment, appellants have waived this ground. *McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 343 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

## WRONGFUL DEATH ACTION

In their second point of error, appellants contend the court erred in applying section 16.003(b). Appellants argue that the Medical Liability Act applies to wrongful death actions claiming medical negligence, rather than section 16.003(b), which allows claims for wrongful death to be filed within two years from the date of death. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(b) (Vernon 1986).

 We hold that section 16.003 provides the applicable limitations provision for appellants' wrongful death action based on claimed medical malpractice. We follow our earlier opinion in *Wilson v. Rudd,* 814 S.W.2d 818 (Tex.App.—Houston [14th Dist.] 1991, writ denied), even though we recognize some of our sister courts have determined that section 10.01 governs limitations on all medical liability claims. *See, e.g., Goode v. Shoukfeh,* 863 S.W.2d 547, 551 (Tex.App.— Austin 1993, no writ); *Todd v. Planned Parenthood,* 853 S.W.2d 124, 127 (Tex.App.— Dallas 1993, writ denied); *Blackmon v. Hollimon,* 847 S.W.2d 614 (Tex.App.—San Antonio 1992, writ denied); *Shidaker v. Winsett,* 805 S.W.2d 941, 943 (Tex.App.—Amarillo 1991, writ denied).[3] The plain language of section 16.003(b) reflects a clear legislative intent to adopt an absolute two-year limitations period for wrongful death actions, and that period is triggered only by the event of death. *Wilson,* 814 S.W.2d at 822, citing *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 354 (Tex.1990).

---

**2.** "... I feel that the facts conclusively show that Mrs. Maxwell knew or should have known of the 'injury' of misdiagnosis alleged to have occurred in 1987 when Mr. Maxwell was diagnosed with lung cancer in 1989. She did not file suit within a reasonable period thereafter."

**3.** The supreme court, in denying applications for writ of error both in *Wilson* and in three of the contrary cases, has failed to resolve the conflict.

Even if the absolute two-year limitations period is applicable, appellants argue that the period should be tolled for 75 days, making their suit timely filed. Appellants gave the required 60–day notice under section 4.01 of article 4590i. Appellees contend section 16.003(b) mandates an *absolute* two-year period, and the tolling provision in the Medical Liability Act does not apply. We disagree.

■ Pre-suit notice under section 4.01 is mandatory in all medical liability claims, which must include those cases resulting in death. *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983).[4] The Act contemplates applicability to other limitations provisions by referring to the "applicable" limitations provision. TEX.REV.CIV. STAT.ANN. art. 4590i, § 4.01(c) (Vernon Supp. 1994). Moreover, we find support for appellants' position in our recent opinion of *Hogan v. Hallman*, 889 S.W.2d 332 (Tex.App.— Houston [14th Dist.] 1994, writ requested). In *Hogan*, we applied another tolling provision in the Medical Liability Act to a wrongful death action. We found that the general tolling statute for minors, section 16.001 of the Civil Practices and Remedies Code, is part of the "other law" expressly made inapplicable by the operation of the Medical Liability Act. *Hogan*, 889 S.W.2d at 336; *see also Wilson*, 814 S.W.2d at 821. Instead, we applied the tolling provision for minors in section 10.01 of the Act, even though we held that the wrongful death action was governed by the limitations provision in section 16.003(b). *Hogan*, 889 S.W.2d at 336.

■ As a part of the Medical Liability and Insurance Improvement Act, the legislature intended section 4.01 to apply to medical malpractice involving death. We hold that the 75–day tolling provision in section 4.01 of the Medical Liability Act applies to all medical liability claims where proper notice is given according to the Act, including wrongful death claims. Therefore, because Maxwell died on September 14, 1989, appellants'

wrongful death suit was timely filed on September 30, 1991, i.e., within two years and 75 days of death. Appellants' claims against Dr. Bala were not barred as a matter of law by the two year statute.

■ As to Dr. Mani, however, the cause of action for malpractice was barred in 1988, before Maxwell died. Section 16.003(b) only sets the time when a wrongful death action accrues, if it exists. It does not provide that there is always an action to accrue. The Wrongful Death Statute allows an action by a decedent's beneficiaries "only if the individual injured would have been entitled to bring an action for the injury if he had lived." TEX.CIV.PRAC. & REM.CODE ANN. § 71.003(a) (Vernon 1986). If a decedent's action would have been barred by limitations, there is no wrongful death action to accrue. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 348–49 (Tex.1992). We hold that any wrongful death action against Dr. Mani is barred.

We sustain point of error two as to the wrongful death action against Dr. Bala only.

## COSTS

■ Finally, in their third point, appellants contend that the trial court erred in assessing costs against them. It is settled law in Texas that the assessment of court costs is a matter within the sound discretion of the trial court, and will not be disturbed on appeal unless there is a clear abuse of discretion. *San Antonio Housing Auth. v. Underwood*, 782 S.W.2d 25, 27 (Tex.App.— San Antonio 1989, no writ).

■ Appellants' only arguments are that appellees did not properly request the costs and they have cited no authority showing their entitlement to them. Appellees respond that they were entitled to costs as the prevailing party under TEX.R.CIV.P. 131. *See Deveroex v. Nelson*, 517 S.W.2d 658, 663 (Tex.Civ.App.—Houston [14th Dist.] 1974), *aff'd*, 529 S.W.2d 510 (Tex.1975). Rule 131 provides that the successful party may recover all costs from his adversary. A "success-

---

4. The record contains a letter written by the trial court to the attorneys reflecting the court's reasoning behind the orders granting summary judgment. The learned district judge, I. Allan Lerner, was of the view that section 4.01 did not apply because the notice requirement was not mandatory and that the failure to give notice was merely grounds for abatement. We believe Judge Lerner was incorrect: that under *Schepps* notice is mandatory, and since proper notice was given prior to filing suit the applicable limitations period was tolled.

ful party" is one who obtains a judgment of a competent court vindicating a civil claim of right. *Perez v. Baker Packers, a Div. of Baker Intern. Corp.,* 694 S.W.2d 138, 143 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). When defendants are the successful parties, it is appropriate to award them costs. *Ferguson v. Beal,* 588 S.W.2d 651, 653 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Moreover, the rule for costs applies to summary judgment proceedings. *See Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 893 (Tex. App.—El Paso 1983, no writ). Because the court granted summary judgment in appellees' favor, they were successful in their claim of right in the trial court. We conclude the trial court did not abuse its discretion in assessing costs against appellants and overrule point of error three.

## CONCLUSION

We affirm the summary judgment in favor of Dr. Mani on both the survival and wrongful death claims. Dr. Bala, however, failed to establish his entitlement to summary judgment as a matter of law. Therefore, the summary judgment in favor of Dr. Bala is reversed and remanded for a trial on the merits.

SEARS, J., concurs in the results only.