Robert J. ROWNTREE,
II, M.D., Petitioner,

v.

Penelope HUNSUCKER and John
Hunsucker, Respondents.

No. D–1665.

Supreme Court of Texas.

May 27, 1992.

Leonard Davis, Douglas R. McSwane, Jr., Michael E. Starr, Potter, Guinn, Minton, Roberts & Davis, Tyler, for petitioner.

C.L. Mike Schmidt, Ronald D. Wren, Stradley, Schmidt & Wright, Dallas, for respondents.

## OPINION

GONZALEZ, Justice.

This is an appeal in a medical malpractice case based on allegations of a failure to diagnose the injury-causing condition. The trial court granted a summary judgment for the doctor on limitations grounds. The court of appeals, with one justice dissenting, reversed and remanded, holding that "the summary judgment evidence raises a question whether (the doctor's) treatment of (the plaintiff) continued for as long as she was taking the medication which he prescribed during the time for which it was prescribed." 815 S.W.2d 779, 782 (Tex. App.—Texarkana 1991). We reverse the judgment of the court of appeals and affirm that of the trial court.

The summary judgment evidence shows that Penelope Hunsucker's family doctor referred her to Dr. Robert Rowntree, II, a specialist in internal medicine, because of hypertension. During her first visit on October 4, 1985, Dr. Rowntree performed an examination and prescribed the medication Sectral for the treatment of that condition.

Mrs. Hunsucker returned to Dr. Rowntree's office to have her blood pressure checked by nurses on October 11, 1985,

November 11, 1985, and January 3, 1986, but Dr. Rowntree did not see her on any of these occasions. During Mrs. Hunsucker's February 13, 1986 office visit, Dr. Rowntree examined her for an unrelated condition, prescribed a refill for Sectral, and referred her to a urologist.

She did not return until September 15, 1986, at which time she complained of stress due to recent deaths in her family and her mother's surgery. Dr. Rowntree performed a limited examination and continued the prescription for Sectral. This was the last time Dr. Rowntree saw or talked to her and future appointments were not scheduled.

Mrs. Hunsucker telephoned Dr. Rowntree's office on May 22, 1987, requesting a refill of Sectral. She did not express any complaints nor did she receive any medical advice at that time. She was given a prescription authorizing five refills. The exact prescription is not in the record, but each refill contained 30 capsules, and the testimony established that this was a six-month supply. This was the last contact between Dr. Rowntree or his office and the Hunsuckers prior to Mrs. Hunsucker's debilitating stroke on January 5, 1988 due to an occluded carotid artery.[1]

A pharmacy refilled Mrs. Hunsucker's Sectral prescription on May 22, July 10, September 7, October 29, and December 12, 1987. Mrs. Hunsucker was also treated by another physician in December of that year for a respiratory infection.

The Hunsuckers gave notice of claim to Dr. Rowntree on July 31, 1989, and filed suit on October 30, 1989. They alleged that, during Dr. Rowntree's treatment of Mrs. Hunsucker for high blood pressure, he negligently failed to diagnose, monitor, and otherwise properly treat the occluded artery. The Hunsuckers do not allege any injury from taking the medication Dr. Rowntree prescribed.

Based on this evidence and the pleadings of the parties, we must determine whether Dr. Rowntree, in moving for summary judgment based upon an affirmative defense, established as a matter of law that there were no questions of fact regarding the essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). Under his defense, Dr. Rowntree is not entitled to summary judgment unless he conclusively established that the statute of limitations barred the lawsuit. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). For limitations purposes, the controlling issue becomes whether Mrs. Hunsucker's taking medication on a prescription that Dr. Rowntree agreed to refill constitutes "a course of treatment," absent any other concomitant medical care, e.g., office visits or related diagnostic services. This is a question of law rather than fact.

The applicable statute of limitations is found in TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01. It provides that:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

Thus the statute will begin to run from one of three possible dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987).

In order for the suit to be timely, an event giving rise to liability must have occurred after August 15, 1987.[2] Dr. Rown-

---

1. Both Mr. and Mrs. Hunsucker recall a second telephone call for renewal of the prescription in August or September 1987. This conflict in evidence, however, is not determinative of the issues in this case.

2. The critical date for limitations purposes is August 15, 1987. The Hunsuckers gave notice

of the claim on July 31, 1989, and filed suit on October 30, 1989, a span of 91 days. Under the provisions of article 4590i, § 4.01(c) of the Texas Revised Civil Statutes, proper notice " ... shall *toll* the applicable statute of limitations to and including a period of 75 days following the giving of the notice...." (emphasis added). TEX.REV.CIV.STAT. art. 4590i, § 4.01 (1992). As

tree argues that the first option in *Kimball* controls, and that the statute should run from the date of the last examination. The Hunsuckers contend that the statute should begin to run from the date "treatment" ended, which they claim occurred within the statutory period. While we agree with Dr. Rowntree that, in this case, the statute began to run from the date of the alleged wrongful act, we reject his assertion that the last examination of a patient is necessarily the triggering event for the statute of limitations in a medical malpractice suit.

In *Kimball*, we held that if the precise date of the specific breach or tort is ascertainable from the facts of the case, then the statute begins to run from that date. *Id.* We said that the provision that the statute runs from the date of the last treatment:

> contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment. Such a situation *often* arises in suits alleging misdiagnosis or mistreatment.

*Id.* (emphasis added).

In many cases, the applicability of this provision will be clear. There are some situations in which the statute would run from the date of the last drug treatment, if the course of that treatment is the direct cause of the injury. That is not the situation here. The Hunsuckers do not claim that the drug prescribed by Dr. Rowntree caused harm.

■ Likewise, when the complaint is that the defendant instituted an improper course of treatment based upon a misdiagnosis, the last date of such mistreatment is the date the statute begins to run. *Kimball v. Brothers*, 741 S.W.2d at 372. The Hunsuckers concede, however, that Mrs. Hunsucker did indeed suffer from high blood pressure, and that the Sectral was appropriately prescribed.

■ Dr. Rowntree argues that this "course of treatment" was for one condition, hypertension, while the "subject of the claim" is a different condition, an occluded artery. Thus Dr. Rowntree contends that the Hunsuckers do not allege *mis*diagnosis followed by improper treatment, but *a failure to diagnose* a different condition.

In Texas, the existence of a general physician-patient relationship does not axiomatically constitute a course of treatment. For example, in *Atha v. Polsky*, 667 S.W.2d 307 (Tex.App.—Austin 1984, writ ref'd n.r.e.), the plaintiff sued for mistreatment of a skin ailment. The treatment which caused the injury was the use of a drug in connection with ultraviolet light, which the defendant doctor had administered more than two years before the suit was filed. The patient visited the doctor again within two years of suit, but for treatment totally unrelated to the injury. The court held that this latter treatment could not prevent application of the statute of limitations because it was unrelated to the suit's substantive claim. The court concluded that the mere existence of a physician-patient relationship does not, on its own accord, constitute a "course of treatment." *Id.* at 309; *accord Fleishman v. Richardson–Merrell, Inc.*, 226 A.2d 843, 845 (N.J.Super.Ct.App.Div.1967); *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 321–23, 187 N.E.2d 777, 779 (1962); *Grubbs v. Rawls*, 235 Va. 607, 369 S.E.2d 683, 686 (1988).

The operative statute clearly states that the date of last treatment is relevant only if a course of treatment has been established for the condition that is the subject of the claim. New York's highest court said of its own similar statute of limitations: "While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that

---

this is a tolling provision, notice stops the running of the statute for 75 days, at the end of which the statute resumes running. *Phillips v. Sharpstown Gen. Hosp.*, 664 S.W.2d 162, 165–66 (Tex.App.—Houston [1st Dist.] 1983, no writ).

Thus, the Hunsuckers' suit is not timely unless they gave notice at least 16 days before the end of statutory two-year period (91 days — 75 days = 16 days). Thus, there can be no liability for events occurring prior to August 16, 1987.

the failure to establish a course of treatment is a course of treatment." *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 437, 577 N.E.2d 1026, 1029 (1991). In that case, the patient sued a doctor for failure to diagnose and monitor breast cancer. The patient was treated continuously for infertility due to endometriosis during a period within the statutory limits. The court concluded that the treatment for endometriosis did not extend the time for bringing suit for failure to diagnose the breast cancer. The court held that:

> [E]ssential to the application of the doctrine is that there has been a course of treatment established with respect to the condition that gives rise to the lawsuit. We have held that neither the mere "continuing relation between physician and patient" nor "the continuing nature of a diagnosis" is sufficient to satisfy the requirements of the doctrine.

*Id.* 573 N.Y.S.2d at 436, 577 N.E.2d at 1028 (citations omitted). Because there was no connection claimed between the course of treatment for endometriosis and the breast cancer, the court held that the claim was time-barred as a matter of law. *Id.* 573 N.Y.S.2d at 437, 577 N.E.2d at 1029.

The subject of the Hunsuckers' claim is the alleged failure of Dr. Rowntree to diagnose, treat, and monitor Penelope Hunsucker's occluded arteries. If the blockage of the arteries is a condition discrete from high blood pressure, then ongoing treatment for high blood pressure is not treatment for the condition that is the basis of the Hunsuckers' claim.

Nevertheless, this issue cannot be resolved by summary judgment on the present record. It was Dr. Rowntree's burden as summary judgment movant to establish when the cause of action accrued. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). There is no summary judgment evidence, for example, that within a reasonable medical probability, the condition of occluded arteries was not a cause of the high blood pressure. We must indulge all reasonable inferences and resolve any doubts in favor of the non-movant. *Acker*

*v. Texas Water Comm'n*, 790 S.W.2d 299, 302 (Tex.1990). For summary judgment purposes we cannot say that, as a matter of law, the condition of occluded arteries and high blood pressure are two unrelated conditions.

■ Alternatively, Dr. Rowntree argues that a course of continuing treatment cannot be based on the fact that the patient continued to take the medication. He contends that we must establish a rule that the statute must run from the date of last contact with the physician, because the statute would never run in many situations such as when a prescription for medication is to be taken as needed, or a recommendation of a particular exercise or regimen. The Hunsuckers claim that treatment continued as long as she was taking the medication, or at least when she obtained the last prescription from the pharmacist in December 1987.

The answer to questions of whether the patient is receiving a course of treatment, and when the course of treatment ends will depend upon the specific facts of the case. Courts have considered such factors as whether a physician-patient relationship is established with respect to the condition that is the subject of the litigation, whether the physician continues to examine or attend the patient, and whether the condition requires further services from the physician. *See, e.g., Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 138 (N.D. 1990); *Couillard v. Charles T. Miller Hosp., Inc.*, 92 N.W.2d 96, 103 (Minn.1958); *see generally* 2 Miles Jaremski & Louis Goldstein, Medical & Hospital Negligence, § 31:05 (1990).

The Hunsuckers cite a number of cases that stand for the proposition that drug treatment is medical treatment. *See, e.g., Scarborough v. Aetna Life Ins. Co.*, 572 S.W.2d 282, 284 (Tex.1978); *accord Thomas v. Jacksonville Electric Auth.*, 536 So.2d 310, 311–12 (Fla.App.1988); *Freeman v. Mid–South Ins. Co.*, 197 Ga.App. 445, 398 S.E.2d 727, 728 (1990). While we do not question this truism, we do question whether self-administration of a drug in and of itself is a course of treatment that

tolls the statute. Courts that have considered the question have generally rejected a per se rule that a course of treatment continues as long as the patient continues taking a drug prescribed by the defendant. In *Fleishman v. Richardson–Merrell, Inc.,* 94 N.J.Super. 90, 226 A.2d 843 (App.Div. 1967), the complaint was that a drug prescribed for the treatment of high cholesterol levels caused cataracts. The prescription authorized two refills and the patient saw the doctor only one additional time, which was the week after the doctor prescribed the medication. The patient continued to take the drug for the next year and a half. The court held that any duty to monitor the patient's condition was "owed only to one who actually remains under the physician's treatment and who follows the course of treatment prescribed." *Id.* 226 A.2d at 845. The court concluded that the defendant's treatment of the patient ceased shortly after the last office visit, and that the defendant owed a duty only while the patient was consulting the physician and taking the medication pursuant to the prescription. *Id.*

In *Parrott v. Rand,* 126 A.D.2d 621, 511 N.Y.S.2d 57 (1987), suit was filed on June 27, 1983, for misdiagnosis of basal cell carcinoma "on June 27, 1979." The court said, "where as here, the patient is relying solely upon his continued use of a medication long after the last contact with the physician who prescribed it, we find the continuous treatment doctrine to be inapplicable." *Id.* 511 N.Y.S.2d at 58.

In *Bernardo v. Ayerest Laboratories,* 99 A.D.2d 430, 470 N.Y.S.2d 395 (1984), the suit was for injury caused by the drug Premarin. The drug was prescribed in 1969, and the patient saw the doctor for an unrelated matter the next year. The patient took the drug for the next six years, obtaining refills at a pharmacy without the participation of the defendant. The court said, "the record here shows clearly that plaintiff treated herself for a number of years. Her contentions amount to a claim that the dispensing of a prescription continues a physician's services and course of treatment in perpetuity without further consultation and with no other evidence than her own self-serving statement that she continued to fill the same prescription for a period well beyond the statutory period of limitation." *Id.* 470 N.Y.S.2d at 396.

In *Bikowicz v. Nedco Pharmacy, Inc.,* 114 A.D.2d 708, 494 N.Y.S.2d 541 (1985) suit was filed in 1981, complaining that the defendant doctor prescribed an addicting drug in 1973. The defendant had no contact with the plaintiff after the initial visit, but the plaintiff continued to obtain refills from a pharmacist. There was evidence that the pharmacist consulted with the defendant over the telephone as late as 1977. The court said that the alleged malpractice occurred in 1973, and treatment ended either at the end of direct consultations or when the pharmacist last consulted the defendant in 1977. The court held that "the continuous treatment doctrine has no application where, as here, the patient undertakes self-treatment by continuing use of a drug prescribed many years before, long after she has discontinued treatment by the prescribing doctor." *Id.* 494 N.Y.S.2d at 542.

Common to all of these cases is a recognition that a plaintiff who takes medication significantly beyond the period contemplated by the physician's prescription, without further attentions from the physician, is not being treated by that physician, but is engaging in self-treatment. The cases stand for the proposition that a physician may establish a course of treatment by enlisting the aid of the patient to self-administer a medication, but only if the physician controls the treatment and continues to render medical services.

The court of appeals' holding that limitations is extended by a patient's taking of medication is an unworkable rule. It replaces the fixed period set by the Legislature with a period that is determined by the patient. A rule that extended limitations until all authorized prescription refills had been obtained is equally unworkable. It would encourage physicians not to authorize refills and to insist upon an office visit for each prescription, increasing the cost of medical care.

In the case before us, after the initial consultation, there were no regular examinations or other services, and no return appointment scheduled. A single instance of prescription renewal does not demonstrate sufficient involvement by the physician to constitute a continuing course of treatment.

In sum, the Hunsuckers do not allege that a course of treatment was the direct cause of Mrs. Hunsucker's injury. They do not claim that an improper course of treatment was instituted on a misdiagnosis. The Hunsuckers do not otherwise allege a course of treatment for the condition made the basis of their claim so that the statute could run from the last date of such treatment under *Kimball*. Rather, the Hunsuckers claim that Dr. Rowntree breached a duty to perform the proper examinations from which he should have detected the occluded arteries. Dr. Rowntree could have breached this duty only on those occasions when he had opportunity to perform such examinations. Thus, in this case, the statute of limitations began to run on the date of the alleged wrongful act. This act, ascertainable from the facts of the case, was the last visit that Mrs. Hunsucker paid to Dr. Rowntree's office. *Kimball*, 741 S.W.2d at 372. We hold that, as a matter of law, limitations bars the claims of the Hunsuckers, and the trial court correctly rendered summary judgment for Dr. Rowntree.

The judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.