**Ronald MOSS, Appellant,**

**v.**

**Harshad G. SHAH, M.D., Appellee.**

**No. 08–98–00316–CV.**

Court of Appeals of Texas,
El Paso.

Nov. 4, 1999.

Rehearing Overruled Jan. 5, 2000.

C. Denice Smith, Houston, for appellant.

Barbara A. Bauernfeind, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, for appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

This is an appeal from a summary judgment in favor of the defendant doctor on the plaintiff's medical negligence and breach of contract claims. We affirm in part and reverse and remand in part.

### *FACTS*

On May 9, 1991, Appellant Ronald Moss first saw Appellee Dr. Harshad Shah for vision problems including "floaters" and shadows in his vision. Moss's eye doctor had referred Moss to Shah, a retinal specialist, after diagnosing Moss with a detached retina in his right eye. Dr. Shah implanted a scleral buckle, which was intended to hold the retina in place, in Moss's right eye on June 21, 1991. Over the next year and a half, Moss complained of double vision problems he associated with the buckle, but Shah warned Moss that removing the buckle could result in another retinal detachment. Following the recommendation of another specialist Moss consulted about the double vision, however, Shah surgically removed the buckle on November 28, 1992. Shah saw Moss for five post-operative "recheck" visits following the removal. The last visit Shah characterized as a "recheck" in his notes was on October 21, 1993. At Moss's next checkup, a yearly exam on November 22, 1994, Shah discovered that Moss's retina had again detached. Moss was still complaining of "floaters" at the time Shah discovered the second detachment, but he had no additional symptoms. On December 12, 1994, Shah surgically repaired Moss's second retinal detachment. After the surgery, Moss was blind in his right eye. Despite several explanations from Shah including the possibility of a gas bubble and cataracts, the vision in Moss's

right eye did not improve. Shah continued to treat Moss, including additional surgeries on the right eye, until July 24, 1995 when he told Moss he could do nothing further for him.

Moss sent a letter notifying Shah of malpractice claims on April 19, 1996 and filed suit against Shah on June 28, 1996. Shah moved for summary judgment claiming that limitations barred Moss's medical negligence claims because the negligence forming the basis of Moss's complaint occurred at the surgery to remove the scleral buckle on November 28, 1992, more than two years prior to Moss's suit. As part of his responsive summary judgment evidence, Moss filed the affidavit of Dr. Conard Moore. Dr. Moore opined that "[a] patient such as Mr. Moss, who has experienced multiple retinal tears and/or detachments, requires a careful, continuous course of treatment by a qualified ophthalmologist. . . ." Moore concluded that "removal of the scleral buckle, without careful follow-up on a weekly or monthly basis thereafter" caused Moss's second retinal detachment and constituted a "significant deviation from the standard of care."[1] The trial court granted summary judgment in favor of Shah and Moss appeals contending, among other things, that Shah engaged in a negligent course of treatment that continued until July 1995.

### *DISCUSSION*

In his first three issues for review, Moss contends that the trial court erred in granting summary judgment in Shah's favor because the summary judgment evidence created a fact issue as to whether Shah engaged in a course of treatment for Moss's right eye after the surgery to remove the scleral buckle, and whether that

---

1. Shah maintains that we should disregard the Moore affidavit because he objected to it in his reply to Moss's supplemental response to the motion for summary judgment. Shah objected that the affidavit fails to set forth any specifics of the standard of care. Shah, however, failed to obtain a ruling on his objections and thereby waived the issue for review.

*Utilities Pipeline Co. v. American Petrofina Mktg.,* 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ). Moreover, the affidavit sufficiently states that weekly or monthly monitoring was required and Shah's failure to do so fell below the standard of care. Accordingly, we consider the affidavit as part of the summary judgment evidence.

course of treatment was negligent. We agree.

■ The legislature enacted the Medical Liability and Insurance Improvement Act to alleviate a perceived medical malpractice insurance crisis in the State of Texas.[2] In an effort to accomplish this goal, an absolute two-year period of limitations was adopted as follows:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.... [3]

This three-date scheme was intended to aid the plaintiff who had difficulty ascertaining a precise date on which his injury occurred, specifically in circumstances where the claim arose from a course of treatment or a period of hospitalization that extended for a period of time.[4] The provision at issue here permitting the limitations period to run "from the date the medical or health care treatment that is the subject of the claim ... is completed" contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment. Such a situation often arises in suits alleging misdiagnosis or mistreatment.[5]

■ We believe such a situation exists in this case. On the record before us, the exact date of Moss's injury is not ascertainable. We know only that the injury, the second retinal detachment, occurred sometime between the 1992 surgery to remove the buckle and his office visit of November 22, 1994. Moss's situation therefore fits squarely within the type of injury the course of treatment doctrine is intended to address. We acknowledge, however, that not every injury of unascertainable date is the result of a negligent course of treatment. The answer to questions of whether the patient is receiving a course of treatment, and when the course of treatment ends will depend upon the specific facts of the case. Courts have considered such factors as whether a physician-patient relationship is established with respect to the condition that is the subject of the litigation, whether the physician continues to examine or attend the patient, and whether the condition requires further services from the physician.[6]

Here, the summary judgment evidence shows that Moss was initially referred to Shah because of the detached retina in his right eye. This evidence tends to establish a physician-patient relationship between Shah and Moss regarding that particular condition. The evidence also shows several post-operative checkups following the buckle removal surgery thus showing a continuing physician-patient relationship relative to Moss's retina problems. The same checkups establish that Moss's condition required further services from Shah. Moreover, the Moore affidavit provides some evidence that the surgery Moss underwent required careful monitoring during the post-operative period. The affidavit also tends to establish that inadequate monitoring after surgery, rather than the surgery alone, was the cause of Moss's second retinal detachment. In light of the Moore affidavit, we reject Shah's contention that Moss's injury occurred at the time of surgery rather than after a negligent course of follow-up monitoring treat-

**2.** *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987); Tex Rev.Civ. Stat. Ann. art. 4590i, § 1.02(a)(5) (Vernon Pamph.1999).

**3.** Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Pamph.1999).

**4.** *Kimball,* 741 S.W.2d at 372; *see also Gross v. Kahanek,* 3 S.W.3d 518, 520 (Tex. 1999);

*Earle v. Ratliff,* 998 S.W.2d 882, 885–86 (Tex. 1999).

**5.** *Kimball,* 741 S.W.2d at 372.

**6.** *Rowntree v. Hunsucker,* 833 S.W.2d 103, 106 (Tex.1992).

ment. As the Supreme Court recently noted,

> [i]f treatment is negligent following surgery, then section 10.01 provides that limitations begins to run from the date of the breach or tort or from the date that treatment was completed. Thus, limitations on a claim that a physician has improperly treated a patient's infection following surgery does not begin to run on the date of surgery merely because the infection would not have occurred but for the surgery.[7]

In this case, limitations on Moss's claims that Shah improperly monitored him after surgery did not begin to run on the date of surgery simply because the monitoring would not have been necessary but for the surgery.

In *Jones v. Cross*,[8] the Houston First Court of Appeals found a course of treatment on allegations similar to Moss's allegations in this case. The court found that allegations in the plaintiff's petition, supported by his summary judgment affidavit, of the defendant's negligence during a course of continuing treatment consisted "among other things" of deep incisions during a surgery, raised a fact issue about the date of the alleged tort. The court liberally construed the "among other things" language in the pleadings to raise an issue of negligence during the appellant's post-operative period.[9] Because none of the summary judgment evidence offered by the defendant conclusively showed that the plaintiff's allegations related only to the surgical procedure and not also to the post-operative care, summary judgment based on the date of surgery rather than on the last date of postoperative care was inappropriate.[10] As in Moss's case, the plaintiff in *Jones* claimed that the defendant doctor's post-operative

course of care contributed to the injury thereby extending the beginning of limitations until the end of the treatment. Accordingly, we find Moss's case similar to *Jones* and determine that the statute of limitations did not begin to run on Moss's claims against Shah until Moss completed his course of treatment with Shah.

■ Having found that Shah engaged in a course of treatment for Moss's retina problems, the question becomes, when did the allegedly negligent course of treatment end and the statute begin to run? Determining when treatment has concluded for purposes of Section 10.01 simply amounts to deciding when a plaintiff's cause of action accrues, and the question of when a claim accrues is one of law.[11] Thus, as a matter of law, Moss's cause of action accrued at the end of the course of monitoring treatment following the scleral buckle removal surgery. We find, however, that in this case the date of the end of the monitoring is subject to a factual dispute, and we further find that Shah has failed to establish that date as a matter of law as it is his burden to do.[12] The summary judgment evidence shows that in the months following the questioned surgery, Moss received several "recheck" visits, then returned after a year for a "yearly exam" on November 22, 1994. It was at the November 22, 1994 yearly exam that Shah found Moss's retina had detached for the second time. Shah contends that the November 22, 1994 visit was merely a routine exam unrelated to Moss's prior surgery. Although routine exams unrelated to a specific condition are not generally considered part of a course of treatment for the condition,[13] Moss's yearly checkup in this case was related to the specific condition at issue: detachments and tears to his right retina. Shah's notes from a December 2,

---

7. *Earle*, 998 S.W.2d at 887.

8. 773 S.W.2d 41, 43 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (opin. on reh'g).

9. *Id.*

10. *Id.*

11. *Chambers v. Conaway*, 883 S.W.2d 156, 159 (Tex.1993).

12. *Naugle v. Theard*, 917 S.W.2d 287, 291 (Tex.App.—El Paso 1995, writ denied).

13. *Damron v. Ornish*, 862 S.W.2d 683, 685 (Tex.App.—Dallas 1993, writ denied) (opin. on reh'g).

1994 office visit a few days after the November 22, 1994 exam and several days before the attempted re-attachment surgery reveal Moss's continued concern about "floaters" in his vision. Moss had expressed the same concerns from the beginning of his relationship with Shah as well as at the post-surgical recheck exams. Thus, there is some evidence that the November 22, 1994 and December 2, 1994 exams relate to the continuing relationship between Shah and Moss regarding the problems with Moss's right retina and with regard to Shah's removal of the scleral buckle. Indulging all reasonable inferences in favor of Moss as we must, we find that Shah failed to prove as a matter of law that the November 22, 1994 exam was not part of a flawed course of follow-up care.

Shah argues, however, that Moss's real criticism as stated in Moore's expert affidavit is Shah's failure to provide treatment rather than failure to adequately monitor his progress after surgery. He relies upon *Rowntree* and *Husain v. Khatib*,[14] to argue that the failure to perform tests or examinations which ultimately could have prevented an injury (stroke in *Rowntree* ) or discovered earlier a disease (cancer in *Husain* ), is actually failure to establish a course of treatment and therefore fails to extend the statute of limitations. We find, however, that Shah's reliance on *Rowntree* is misplaced. In *Rowntree,* the Texas Supreme Court noted that the plaintiff claimed Rowntree

> breached a duty to perform the proper examinations from which he should have detected the occluded arteries. Dr. Rowntree could have breached this duty only on those occasions when he had opportunity to perform such examinations. Thus, in this case, the statute of limitations began to run on the date of the alleged wrongful act. This act, ascertainable from the facts of the case, was the last visit that Mrs. Hunsucker paid to Dr. Rowntree's office.[15]

Similarly in *Husain,* the Supreme Court found a plaintiff's claim barred by limitations because

> Khatib's [the plaintiff] complaint is that Husain was negligent in not taking actions—mammograms, referrals to specialists, proper breast examinations— that would have led to earlier discovery of Khatib's cancer. Those events, or non-events, occurred on specific ascertainable dates: January 25, 1990, and September 26, 1991. On August 25, 1992, Husain ordered the mammogram that detected Khatib's cancer. Therefore, any negligence could only have occurred at the latest at the September 26, 1991, examination.[16]

Based on the holdings in *Rowntree* and *Husain,* Shah argues that the last date at which he could have negligently treated Moss's eyes had to have occurred prior to his November 22, 1994 diagnosis of the second retinal detachment. He therefore contends that the last visit prior to the diagnosis on October 21, 1993, was the latest date the statute of limitations could begin to run.

We disagree. Unlike *Rowntree* and *Husain* in which the plaintiffs contended the defendant doctors failed to take some specific action which would have prevented or uncovered their maladies on dates when appointments were actually scheduled, Moss contends, supported by his expert affidavit, that the surgery coupled with an inadequate course of follow-up monitoring caused his injury. It is the failure to monitor Moss's condition after surgery, not the failure to perform a specific test or examination at any specified time, of which Moss complains. As we have already determined, indulging all reasonable inferences in favor of Moss, the requirement for follow-up monitoring in this case extended at least through the November 22, 1994 appointment, and the statute of limitations began to run, at the earliest, on the

**14.** 964 S.W.2d 918, 920 (Tex.1998).

**15.** *Rowntree,* 833 S.W.2d at 108.

**16.** *Husain,* 964 S.W.2d at 920.

date of that appointment. We therefore sustain Moss's first through third issues for review.

### CONCLUSION

Moss's suit, filed June 28, 1996, fell within the two-year statute of limitations. We therefore reverse the trial court's summary judgment in favor of Shah on Moss's medical negligence claims and remand to the trial court for further proceedings. Because we have determined that the statute of limitations did not commence more than two years prior to Moss's suit, we need not address Moss's fourth and fifth issues alleging open courts violations and fraudulent concealment as these theories are defenses to application of the statute of limitations.[17] Additionally, we note that the trial court granted summary judgment against Moss on "all claims." Moss's Fourth Amended Original Petition included claims for breach of an oral agreement and failure to adequately inform Moss of the risks involved in removal of the scleral buckle. Because Moss has not raised any issues attacking the summary judgment in Shah's favor on those claims, we affirm the judgment as to those claims only.

---

**17.** *Naugle,* 917 S.W.2d at 291(noting open courts merely an argument against application of statute of limitations); *KPMG Peat Marwick v. Harrison County Housing Finance* *Corp.,* 988 S.W.2d 746, 750 (Tex.1999) (noting fraudulent concealment is affirmative defense to limitations).