Joe MATA, Appellant,

v.

Joseph SIMPSON, M.D., Appellee.

No. 04–99–00499–CV

Court of Appeals of Texas,
San Antonio.

July 12, 2000.

Rehearing Overruled Aug. 31, 2000.

Sam A. Westergren, Corpus Christi, for Appellant.

Edward C. Mainz, Jr., Keith A. Kendall, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Joe Mata ("Mata") appeals a summary judgment granted in favor of Joseph Simpson, M.D. ("Simpson") in a medical malpractice action. The sole issue presented in this appeal is whether Mata's action is barred by limitations. The critical question in addressing this issue is determining when Simpson's medical treatment of Mata was completed. We hold that Simpson's medical treatment ended on April 15, 1994; therefore, Mata's suit was filed within the two-year limitations period. The trial court's judgment is reversed, and the cause is remanded for trial.

### BACKGROUND

In September of 1992, Mata was admitted to a hospital for treatment of a drug addiction. Simpson saw Mata on the day of his discharge to approve the discharge. Simpson continued to treat Mata after his discharge. Mata had three office visits with Simpson: in November of 1992, September of 1993, and October of 1993. Simpson prescribed medication for Mata monthly, on October 18, 1993, October 25, 1993, November 12, 1993, December 5, 1993, December 30, 1993, January 23, 1994, February 15, 1994, March 11, 1994, and April 4, 1994. Simpson increased Mata's medication on three of these occasions: on October 25, 1993, November 12, 1993, and February 15, 1994.

Simpson stated in his deposition that the medication he prescribed for Mata, Doxepin, had several side effects. Simpson monitors his patient's side effects by asking his patient about them over the phone. Simpson stated that he does not authorize refills without phone contact. Simpson's practice was never to authorize refills in advance because he expected his patients to come back, presumably to monitor their side effects.

Mata stated that he would have returned to Simpson for additional refills if he had not experienced a seizure. This accords with the testimony of Simpson, who stated that he expected Mata to return for further treatment. The expected return visit, however, was interrupted when Mata had the seizure on April 15, 1994. The seizure was eleven days after Simpson authorized Mata's last refill. On the same day as the seizure, Mata was taken to the emergency room where he was treated by a new physician: Dr. Martin Guerrero. On April 18, 1994, Mata had follow-up treatment with Dr. Guerrero. Dr. Guerrero's notes indicate that Mata was taking the Doxepin prior to the seizure but stopped taking the Doxepin since the seizure. Mata was given a different prescription (Dilantin) and was told not to take any more Doxepin. Dr. Guerrero's notes contain a plan of treatment, which included increasing Mata's Dilantin dosage and prescribing Phenobarb. Mata was to return in three weeks for CBC, Phenobarb and Dilantin levels, and Mata was to be reevaluated in four weeks. Dr. Guerrero's notes conclude, "The patient is advised not to take any of the Doxepin." Mata was never treated again by Simpson once his new treatment began with Dr. Guerrero.

Mata filed suit against Simpson on April 11, 1996. Simpson moved for summary judgment contending Mata's lawsuit was barred by the two-year statute of limitations. Simpson alleged that the limitations period began running on April 4, 1994. Mata filed a response contending that Simpson's medical treatment was not completed until April 15, 1994. The trial court granted summary judgment in Simpson's favor, and Mata timely filed this appeal.

### STANDARD OF REVIEW

▪ Section 10.01 of the Medical Liability and Insurance Improvement Act of Texas sets forth the statute of limitations for health care liability claims. *See* TEX.

Rev.Civ. Stat. Ann. § 10.01 (Vernon Supp. 2000). The two year statute of limitations runs from "the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." *Id.* In this case, it is undisputed that the limitations period began to run from the date Simpson's medical treatment of Mata was completed. "[D]etermining when treatment has concluded for purposes of section 10.01 simply amounts to deciding when a plaintiff's cause of action accrues, and the question of when a claim accrues is one of law and not fact." *See Chambers v. Conaway,* 883 S.W.2d 156, 159 (Tex.1993); *Estate of Magness v. Hauser,* 918 S.W.2d 5, 7 (Tex.App.—Houston [1st Dist.] 1995, writ denied). We review questions of law de novo. *See Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Swift v. Seidler,* 988 S.W.2d 860, 861 (Tex.App.—San Antonio 1999, pet. denied).

### Discussion

A plaintiff who takes medication significantly beyond the period contemplated in a physician's prescription, without further attention from the physician, is not being treated by the physician but is engaged in self-treatment. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 106 (Tex. 1992). However, a physician may establish a course of treatment by enlisting the aid of a patient to self-administer a medication, but only if the physician controls the treatment and continues to render medical services. *See id.*

In *Rowntree v. Hunsucker,* the plaintiff did not allege that the medication prescribed by the defendant physician caused her injury, and after the plaintiff's initial consultation with the physician, there were no regular examinations or services, and no return appointment was scheduled. *See id.* at 510–21; *Rowntree,* 833 S.W.2d at 108. Based on the facts in *Rowntree,* the Court concluded that limitations barred the plaintiffs claim, asserting, "A single instance of prescription renewal does not demonstrate sufficient involvement by the physician to constitute a continuing course of treatment." *Rowntree,* 833 S.W.2d at 108.

In *Gross v. Kahanek,* the Court distinguished *Rowntree,* noting that evidence was presented that the defendant physician had a duty to monitor the effects on his patient while she was taking the prescribed medication. 3 S.W.3d 518, 521 (Tex.1999). The Court asserted that based on the evidence that the physician was required to monitor the patient, the defendant physician maintained a continuing course of treatment for his patient so long as he was prescribing the medication for her. *See id.* The course of treatment ended only after the physician ceased prescribing refills for the patient so that he was no longer responsible for monitoring her condition. *See id.*

A similar result was reached by the Houston court of appeals in *In re Estate of Magness,* 918 S.W.2d 5 (Tex.App.-Houston [1st Dist.] 1995, writ denied). In that case, a patient was under the psychiatric care of the defendant psychiatrist for depression from May 1986 through July 1989. *See id.* at 8. Throughout this course of treatment, the psychiatrist prescribed medication for the patient. *See id.* The patient's last office visit with the defendant was on July 13, 1989, and the defendant last prescribed medication for the patient on July 15, 1989. *See id.* The patient last filled that prescription on July 24, 1989. *See id.* On July 28, 1989, the patient hung herself, leaving her brain-dead and comatose. *See id.* The patient died two days later. *See id.* The Houston court held, as a matter of law, that the patient's cause of action accrued against the defendant psychiatrist on July 28, 1989. *See id.*

The seizure in the instant case is similar to the suicide in the *Magness* case. If not for the seizure, there is evidence that the monthly pattern of treatment established by Simpson would have continued. Simpson testified that he anticipated

Mata returning, and Mata stated that he intended to return but for the seizure. Similar to the facts in *Kahanek*, Simpson testified that he monitored his patients monthly to review and consider possible medication adjustments based on reported side effects. The course of treatment and Simpson's duty to monitor Mata's side effects only ended when Mata experienced the seizure and another physician took control of Mata's treatment.

Simpson argues that treatment ended on April 4, 1994, the date of his last prescription. However, the Texas Supreme Court has rejected this position in *Kahanek*. In that case, the defendant doctor last ordered a refill of the plaintiff's prescription on August 10, 1992. *See Kahanek*, 3 S.W.3d at 519. A different doctor began authorizing refills in September of 1992. *See id.* The Court held that the defendant doctor's course of treatment with the plaintiff ended in September of 1992, not August 10, 1992. *See id.* at 521.

### CONCLUSION

Simpson's medical treatment of Mata ended on April 15, 1994. Mata's lawsuit is not barred by limitations. The trial court's judgment is reversed, and the cause is remanded for trial.

Dissenting opinion by: PAUL W. GREEN, Justice.

PAUL W. GREEN, Justice, dissenting.

The outcome of this limitations case is determined by identifying the date Mata was last treated by Dr. Simpson. The majority holds that Dr. Simpson last treated Mata on the date he suffered a seizure, which was six months after his last visit to Dr. Simpson's office and eleven days after Dr. Simpson refilled his Doxepin prescription for the last time. Because the date of seizure is not relevant to when Dr. Simpson last treated Mata, I respectfully dissent.

### Discussion

A cause of action for medical negligence based on an injury occurring during a course of treatment for a particular condition accrues on the date of the last treatment. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2000); *Gross v. Kahanek*, 3 S.W.3d 518, 520 (Tex.1999). It is undisputed that Dr. Simpson had been treating Mata for chronic insomnia for a period of almost a year and a half. Since Mata claims Dr. Simpson's course of treatment caused his injury, his cause of action accrued on the date when Dr. Simpson last treated him. The majority says the date of Mata's seizure was when he was last treated by Dr. Simpson because on that day "another physician took control of Mata's treatment." 27 S.W.3d at 150.

The majority apparently presumes, based on the frequency of Doxepin refills, that Dr. Simpson's treatment of Mata for insomnia continued beyond the date of the last refill and lasted until Mata was treated for a seizure by Dr. Martin Guerrero, an emergency room physician. But to make that presumption it must be assumed that Dr. Simpson had a continuing duty to monitor Mata's condition, that the seizure obviated the need for further insomnia treatment, and that Dr. Guerrero "took control of Mata's [insomnia] treatment" from Dr. Simpson. None of these assumptions are warranted by the evidence.

In order to extend the cause of action accrual date beyond the date of last contact, it must be shown that the doctor had a continuing duty to monitor the condition of his patient. *See Gross v. Kahanek*, 3 S.W.3d 518, 521 (Tex.1999)(evidence that doctor had duty to monitor patient's Tegretol blood levels). There is no evidence in this record, however, that Dr. Simpson had a duty to monitor Mata's condition beyond his last office visit or beyond the date of the last prescription refill. Moreover, even if it is assumed that Dr. Simpson had a continuing duty to monitor and treat

Mata, there is nothing in the record to suggest that Mata's seizure necessarily marked the end of his insomnia treatment. *C.f. In re Estate of Magness*, 918 S.W.2d 5, 8 (Tex.App.-Houston [1st Dist.] 1995, writ denied)(reasoning that treatment for depression ended on date of hanging because patient became comatose and was no longer treatable). There is no evidence that Mata's seizure avoided the need for any further treatment for insomnia. Finally, if it is assumed again that Dr. Simpson had a continuing duty to treat Mata, the evidence does not show that Dr. Guerrero "took control of Mata's treatment," which up to then had been Dr. Simpson's treatment for Mata's insomnia. *See Gross v. Kahanek*, 3 S.W.3d at 521 (holding that defendant's treatment ended when another physician began to authorize patient's medication refills). The evidence shows only that Dr. Guerrero treated Mata for a seizure of unknown pathology. In short, there is no rational basis for the majority's conclusion that Dr. Simpson's treatment of Mata for insomnia ended on the date when another physician treated Mata for something other than insomnia.[1]

The majority cites the *Gross* and *Magness* cases to support its holding that limitations did not expire. Paradoxically, both of those cases held that limitations barred the plaintiff's cause of action. It should also be pointed out that neither court addressed the precise issue presented here; that is, whether the date of the last prescription is the physician's date of last treatment. Instead, the courts selected the latest date that could possibly be argued as the physician's date of last treatment-in *Gross*, when another doctor took over treatment, and in *Magness*, when the patient hanged herself-and determined on the basis of that date that the lawsuits were filed outside of the limitations period. Consequently, I find neither case to be particularly helpful when considering whether the date of the last prescription is the date of Dr. Simpson's last treatment.

## Conclusion

On the assumption that Mata was receiving continuous treatment for insomnia, we look to the evidence in determining when Dr. Simpson's treatment ended. The only competent evidence in the record on that issue comes from Dr. Simpson. He says the latest possible date he could be considered to have treated Mata was on the date he last prescribed medication. He had no further contact with Mata. Unlike *Gross*, there is no evidence Dr. Simpson had a continuing duty to monitor Mata's condition beyond the date of his last prescription refill. And unlike *Magness*, Mata's seizure was not an event that can be reasonably or even inferentially considered an event marking the end of a course of continuing treatment. Consequently, the only evidence concerning Mata's last day of treatment by Dr. Simpson is the date of the last Doxepin prescription, April 4, 1994. Accordingly, that is the date the cause of action accrued and when limitations began to run.

In most cases, including this one, it is not difficult to calculate the date by which a lawsuit must be filed. Mata knew when he last obtained a prescription refill. This was the latest contact he had with the doctor who was treating him for insomnia. He had two years from this easily identifiable date in which to file suit against Dr. Simpson. He failed to do so, and now complains to this court that he should have had more time. The majority accommodates him.

But it is the legislature's prerogative to establish time limitations for filing lawsuits; it is not this court's prerogative to equitably extend statutory time limitations. Because the majority's decision is not con-

---

1. To use an analogy, what if Mata had gone to the emergency room after an automobile accident and Dr. Guerrero told him to stop taking the Doxepin while he treated him with pain killers? Would the majority still conclude that Mata's cause of action against Dr. Simpson accrued on that date?

sistent with the intent of the legislature, I respectfully dissent.