Affirmed, Memorandum Opinion of March 16, 2004 Withdrawn and Substituted
with Majority and Dissenting Opinions filed April 8, 2004









Affirmed, Memorandum Opinion of March 16, 2004
Withdrawn and Substituted with Majority and Dissenting Opinions filed April 8,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00624-CV

____________

 

BESSIE WINSTON AND
JAMES WINSTON,
Appellants

 

V.

 

WILLIAM H.
PETEREK, M.D.,
Appellee

 



 

On Appeal from the 10th
Judicial District Court

Galveston County, Texas

Trial Court Cause No. 02CV0006-A

 



 

M A J O R I T Y   O P I N I O N

On its own motion, the court withdraws its
memorandum opinion of March 16, 2004 and substitutes the following majority and
dissenting opinions.

Appellants, Bessie Winston and James
Winston (AWinstons@) appeal the grant
of summary judgment in favor of Appellee, William H. Peterek, M.D. (ADr. Peterek@).  The Winstons brought their medical
malpractice suit after Mrs. Winston suffered from a ruptured cerebral aneurysm
and subarachnoid hemorrhages.  Dr.
Peterek filed his motion for partial summary judgment arguing the Winstons= claims were
barred by limitations.  We affirm. 








The Winstons originally brought suit
against Dr. Peterek and the Gulf Coast Medical Group Family Practice.  After giving notice to Dr. Peterek of their
claim pursuant to Article 4590i, Section 4.01 of the Revised Civil Statutes[1]
in October, 2000, the Winstons filed their suit on January 2, 2002.  After the trial court granted Dr. Peterek=s motion for
partial summary judgment, the claims against Dr. Peterek were severed from the
claims against the medical group; thus, a final judgment was rendered in favor
of Dr. Peterek.

Dr. Peterek began treating Winston for
hypertension on October 13, 1993.  Dr.
Peterek initially prescribed Procardia XL on October 13, 1993.  He also prescribed Anaprox on or about June
27, 1994.  Winston=s last office
visit with Dr. Peterek was on April 3, 1998. 
Subsequently, Dr. Peterek=s office made
calls to refill the prescription for Procardia on February 9, 1999, and October
5, 1999.  A call was also made on
November 19, 1998, to refill a prescription for Anaprox.   The record is silent, and the parties do not
assert, that any future office visits were scheduled. Winston sustained her
injuries on November 5, 1999.  








To prevail on a motion for summary
judgment, a defendant must establish that no material fact issue exists and
that it is entitled to judgment as a matter of law.  Rhone‑Poulenc, Inc. v. Steel,
997 S.W.2d 217, 222 (Tex. 1999).  Once
the defendant establishes that no genuine issue of material fact exists
regarding an element of the plaintiff=s claim, the
plaintiff must present competent summary judgment evidence raising a fact issue
on that element.  Guest v. Cochran,
993 S.W.2d 397, 401 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  In conducting our
review of the summary judgment, we take as true all evidence favorable to the
nonmovant, and make all reasonable inferences in the nonmovant=s favor.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex.1999). 
A defendant, as movant, is entitled to summary judgment if it either
disproves at least one essential element of each of the plaintiff=s causes of action
or establishes all the elements of an affirmative defense.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex.1997).  By moving
for summary judgment, Dr. Peterek has the burden to show as a matter of law
that the Winstons= suit is barred by limitations.  Delgado v. Burns, 656 S.W.2d 428, 429 (Tex.
1983) (per curiam).  

Texas law imposes a two-year statute of
limitation on health care claims.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.251 (Vernon
Supp. 2004).[2]  The limitations period is measured from one
of three dates: (1) occurrence of the breach or tort, (2) date that the
relevant course of treatment was completed, or (3) last date of the relevant
hospitalization.  Id.; Kimball
v. Brothers, 741 S.W.2d 370, 372 (Tex. 1987). 
A plaintiff is not permitted to choose the measurement most favorable to
its case.  Shah v. Moss, 67 S.W.3d 836, 841 (Tex.
2001). A reviewing court must first determine whether the date of the alleged
tort is ascertainable.  If the date is
not ascertainable, then the court must employ a course of treatment analysis in
order to determine the last day of treatment. 
Kimball, 741 S.W.2d at 372. 
Naturally, the plaintiff must establish a course of treatment under this
analysis.  Shah, 67 S.W.3d at 841. However,
if the date of the alleged tort or breach is known, the limitations run from
that date.  Id. at 843.  The ascertainable date controls irrespective
of the plaintiff=s attempt to establish a course of
treatment.  Id. at 843-44.   








The Winston=s alleged in their
petition that APeterek continued to misdiagnose Plaintiff=s condition over
the phone . . . . [and] continued to prescribe hypertension and pain medication
despite the medication=s apparent ineffectiveness.@  More specifically, the Winstons alleged in
their petition that Dr. Peterek was negligent in:  (1) In failing to properly perform medical
treatment; (2) failing to examine upon presentment of symptoms; (3) prescribing
medication without a physical examination; (4) failing to use proper diagnostic
procedures in connection with Winston=s symptoms; and
(5) failing to recognize and/or acknowledge the symptoms resulting from his
treatment.  The Winstons do not allege
that the prescribed medications were the cause of her injury; rather, the
Winstons= complaints arise
out of Dr. Peterek=s failure to correctly discover, treat, or
prevent Mrs. Winston=s subsequent injuries through appropriate
follow-up care.    

Allegations of misdiagnosis necessarily
require a reviewing court to use the date of the last visit with the physician
in a limitations analysis.  See
Rowntree v. Hunsucker, 833 S.W.2d 103, 108 (Tex. 1992).  Likewise, a physician=s Anegligent failure
to conduct follow-up procedures@ occurs only Ain connection with
the [last] examination.@  Bala
v. Maxwell, 909 S.W.2d 889, 892 (Tex. 1995). 
The theory in such cases is that when a physician negligently fails to
provide weekly or monthly follow-up treatment, the breach of duty imposed by
the standard of care occurs on the last date the physician actually saw the
patient.  Shah, 67 S.W.3d at 844.

Appellants argue that Mrs. Winston was
injured by a Acourse of treatment.@  However, the gist of their complaint is not
that the medications prescribed by Dr. Peterek caused the injury, but that his
lack of follow-up care caused the injury. 
As the Texas Supreme Court observed, A[w]hile the
failure to treat a condition may well be negligent, we cannot accept the
self-contradictory proposition that the failure to establish a course of
treatment is a course of treatment.@  Rowntree, 833 S.W.2d at 105B06 (quoting from Nykorchuck
v. Henriques, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 437, 577 N.E.2d 1026, 1029
(1991).








Appellants also seem to contend that a Acourse of
treatment@ is supported here by the fact that Mrs.
Winston obtained additional refills of her prescription medication by calling
Dr. Peterek well after her last visit. 
However, the Texas Supreme Court has not supported a rule that would
extend the statutory limitations period until all authorized prescription
refills are obtained.  Rowntree,
833 S.W.2d at 107 (finding such a rule Aunworkable@).[3]  In order to use a course-of-treatment
analysis in connection with prescription drugs, the alleged drug treatment must
be the direct cause of the injury.  See
id. at 105.  Here, the Winstons= claims center on
Dr. Peterek=s negligent follow-up care.  For example, the Winstons= expert stated in
his affidavit: 

Mrs. Winston=s specific case of hypertension
required follow-up medical services throughout the time she was being treated
for hypertension with medication.  Mrs.
Winston required medical examinations and monitoring to verify the
effectiveness of the medication and to make medication or other adjustments if
necessary to reduce her blood pressure below hypertension levels. 

 

Absent from the record is an allegation that it was
the drug that caused the injury.  Based
upon the Winstons= allegations, any breach would have
occurred during the last visit on April 3, 1998, which is an ascertainable
date.  Having established an
ascertainable date, we do not conduct a course-of-treatment analysis.  Shah, 67 S.W.3d at 843-44.

Accordingly, the trial court did not err
in granting summary judgment.  The
Winstons filed their lawsuit over three years from the date of last
examination. Thus, they are barred by limitations.  We affirm the judgment of the trial court.

 

/s/      J. Harvey Hudson

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed April 8, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

 

 











[1]  This provision
was formerly found at Tex. Rev. Civ. Stats. Ann. Art. 4590i, ' 4.01(c). 
Medical Liability and Insurance Improvement Act of Texas, 65th Leg.,
R.S., ch. 817, ' 4.01(c), 1977 Tex. Gen. Laws. 2039, 2047, repealed
by Act of June 11, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws. 847, 884.  The provision may now be found at Section 74.051(c) of the Civil
Practice and Remedies Code.





[2]  Effective
September 1, 2003, the provisions found at Article 4590i of the Revised Civil
Statutes  are now found in Chapter 74 of
the Civil Practice and Remedies Code. 
Act of June 11, 2003, 78th Leg., R.S., ch. 204, ' 10.01, 2003 Tex. Gen. Laws. 847, 864.





[3]  The Winstons argue that we should
confine our analysis to those cases involving prescription drugs.  An analysis of the facts of Gross v.
Kahanek, 3 S.W.3d 518 (Tex. 1999) (per curiam) and Rowntreee
v. Hunsucker, 833 S.W.2d 103 (Tex. 1992) instructs us as to
why we are not required to consider additional prescription refills.  We acknowledge that in cases where a
prescribed drug is the cause of an injury that the limitations would run from
the last drug treatment.  Gross, 3
S.W.3d at 521; Rowntree, 833 S.W.2d at 105.  However, the present
case can be both likened and distinguished with Gross and Rowntree.   

The crucial inquiry is
whether the plaintiff alleges injuries directly caused by the prescribed
drug.  The plaintiff in Gross was
prescribed a drug, Tegretol, and the claim specifically arose out of the use of
the drug.  3 S.W.3d at 520.  The plaintiff=s alleged multiple acts of
negligence, including a failure to monitor and maintain an appropriate level of
Tegretol.  Id.  The record also contained evidence that
Tegretol poisoning contributed to the complainant=s death.  Id. 
Conversely, the plaintiff in Rowntree was being treated for
hypertension and subsequently suffered a stroke.  833 S.W.2d at 104.  The plaintiff attempted to extend the period
of limitations by arguing that the course of treatment necessarily included the
time period that plaintiff was taking prescription drugs. Id. at 105.
Notwithstanding subsequent prescription refills and appointments for unrelated
conditions, the supreme court used the date of the last hypertension-related
visit in upholding summary judgment on limitations.  Id. at 108-09.  The supreme court found it determinative that
the plaintiff was not complaining that the drug caused the harm; the plaintiff
even conceded that the drug was appropriately prescribed.  Id. at 105, 108.